Mikael **SALOVAARA**, individually and in his capacity as a fiduciary pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the common law, Plaintiff–Appellant,

Paul T. Shoemaker, Appellant,

v.

Alfred C. **ECKERT**, III, Defendant–Appellee.

Docket No. 99–7702.

United States Court of Appeals, Second Circuit.

Argued May 4, 2000

Decided Aug. 9, 2000

---

Andrew J. Levander (Guy Petrillo and Preetinder S. Bharara, on the brief), Swidler Berlin Shereff Friedman, LLP, New York, NY, for Plaintiff–Appellant and Appellant Paul T. Shoemaker.

Daniel A. Ross (Richard M. Sharfman, on the brief), Dechert Price & Rhoads, New York, NY, for Defendant–Appellee.

Before: MESKILL and CABRANES, Circuit Judges, and TELESCA, District Judge.*

JOSÉ A. CABRANES, Circuit Judge:

This case, a bitter dispute between two former partners and co-fiduciaries under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, is before this Court for a second time. In a previous appeal, we affirmed by summary order a judgment of the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge* ) granting summary judgment to defendant Alfred C. Eckert, III, and dismissing plaintiff Mikael Salovaara's claims under ERISA and the common law. *See Salovaara v. Eckert,* 182 F.3d 901 (table), Nos. 98–7892 & 98–9132, 1999 WL 461820 (2d Cir. June 24, 1999) ("*Salovaara V* ").[1] Salovaara and his trial counsel, Paul T. Shoemaker, now appeal from a final judgment of the District Court, entered June 1, 1999, which: (1) denied Salovaara's motion

---

* The Honorable Michael A. Telesca, of the United States District Court for the Western District of New York, sitting by designation.

1. Pursuant to section 0.23 of our court rules, a summary order may be cited or otherwise used in a subsequent proceeding of the same case. *See* 2D CIR. R. § 0.23; *see also Baker v. Latham Sparrowbush Assoc.,* 72 F.3d 246, 253–54 (2d Cir.1995).

for attorney's fees under ERISA § 1132(g)(1); (2) granted Eckert $466,599 in attorney's fees under ERISA; and, in the alternative, (3) imposed a sanction of $92,343.50 jointly and severally on Salovaara and Shoemaker under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") and on Shoemaker under 28 U.S.C. § 1927 ("§ 1927").[2]

We hold that the District Court properly denied Salovaara's motion for attorney's fees under ERISA and affirm the judgment in that respect. However, for the reasons stated below, we conclude that the District Court erred in several ways with respect to the other aspects of its judgment. We therefore reverse the award of attorney's fees to Eckert; reverse the sanction insofar as it was imposed on Shoemaker under § 1927; vacate the sanction insofar as it was imposed on Salovaara and Shoemaker under Rule 11; and remand for the District Court to consider whether, in light of this opinion, Rule 11 sanctions of some amount should be reimposed and, if so, whether they should be reimposed on Salovaara alone or on Salovaara *and* Shoemaker jointly and severally.

## I.

The following facts are, unless noted otherwise, undisputed. Salovaara and Eckert were, at all times relevant to this case, joint managers of an investment fund, the South Street Corporate Recovery Fund, L.P. ("South Street"). Because South Street held, among other assets, pension fund investments, Salovaara and Eckert were fiduciaries under ERISA. *See* 29 U.S.C. § 1002(21)(A) (defining "fiduciary" to include, *inter alia,* any person who "exercises any authority or control respecting management or disposition of [a plan's] assets"). In late 1993, while he was still Salovaara's partner at South Street, Eckert assumed a management position in Greenwich Street Capital Partners ("Greenwich Street"), a private equity fund. Several months later, in May 1994, Salovaara filed the underlying complaint in this action, alleging that Eckert had violated, and was violating, his fiduciary duties under ERISA and the common law by working simultaneously for South Street and Greenwich Street.[3] Salovaara's complaint sought both injunctive relief and damages.

## A. The 1995 Preliminary Injunction Motion

In January 1995, the Marcus Cable Operating Company, L.P. ("Marcus Cable"), in which Greenwich Street had invested, purchased cable operations in the same viewing market as WEAU–TV, a Wisconsin television station operated by the Busse Broadcasting Corporation ("Busse"), in which South Street had invested. Eight months later, prior to any discovery in this action, Salovaara moved for a preliminary injunction "restraining Eckert from violating his ERISA fiduciary duties by entering into substantial competition" with South Street. *Salovaara v.*

---

**2.** In his original complaint, Salovaara named several defendants in addition to Eckert. Although the parties to this appeal refer to these entities as "defendants-appellees," it is apparent that Eckert is the sole appellee. We have modified the caption accordingly.

**3.** In addition to the complaint in this suit, Salovaara has filed at least three complaints against Eckert in New Jersey state court; a complaint against Gary and Denise Hindes, former officers of South Street's general partner, in the United States District Court for the Southern District of New York; and a complaint against the general partners of South Street in Supreme Court, New York County. *See generally Salovaara v. Jackson Nat'l Life Ins. Co.,* 66 F.Supp.2d 593, 603 (D.N.J.1999) (listing and discussing Salovaara's litigation in connection with South Street). As discussed below, in July 1998, the Superior Court of New Jersey, Chancery Division, granted judgment to Salovaara in the amount of $4 million on claims against Eckert for breach of fiduciary duty, breach of contract, and breach of implied covenant of good faith and fair dealing. As of the time this appeal was briefed, the other actions were apparently still pending.

*Eckert,* No. 94 Civ. 3430, 1996 WL 14444, at *1 (S.D.N.Y. Jan.16, 1996) (*"Salovaara I"*). Salovaara argued that Eckert was breaching his fiduciary duties to South Street because Marcus Cable, a Greenwich Street investment, was competing with Busse, a South Street investment. *See id.*

By Opinion and Order filed January 18, 1996, the District Court granted Salovaara's motion. Noting that a fiduciary owes a duty of loyalty, the District Court ruled first that Salovaara was likely to prevail on the merits of his ERISA claim for injunctive relief. Specifically, the District Court concluded that "[b]ecause Busse's WEAU–TV and Marcus Cable share the same market of Wisconsin viewers, Busse and Marcus Cable are in direct competition with each other. This situation creates a potential conflict of loyalties, and puts Eckert in a position in which he will likely be tempted to act contrary to the best interests of the pension fund beneficiaries." *Id.* at *3; *see also id.* at *4 ("Eckert is *presently* violating his fiduciary duties under ERISA, in that he has placed himself in a position in which his conflicting loyalties, to South Street and Greenwich Street, may pull him in different directions." (emphasis added)).

In addition, the District Court ruled that Salovaara had established a sufficient risk of irreparable injury. The District Court explained that "[m]arket competition generally inflicts an injury which is incapable of being precisely measured, and hence difficult to compensate with damages." *Id.* at *3. Accordingly, the District Court granted Salovaara's motion and ordered Eckert to resign one of his two management positions or to arrange for another Greenwich Street manager to handle all matters concerning Marcus Cable. *See id.* at *5. Eckert chose the latter, "Chinese wall," approach.

**B. The First Summary Judgment Motion and the December 9, 1996 Conference**

In August 1994, thirteen months *before* Salovaara moved for the preliminary in-

junction, Eckert and his co-defendants had moved for summary judgment with respect to Salovaara's ERISA claims. By Order filed March 20, 1996, three months *after* the District Court had granted Salovaara the preliminary injunction, the District Court granted the summary judgment motions in part and denied them in part. *See Salovaara v. Eckert,* No. 94 Civ. 3430, 1996 WL 1730272 (S.D.N.Y. Mar.15, 1996) (*"Salovaara II"*). With respect to Salovaara's ERISA claims, the District Court granted summary judgment and dismissed Salovaara's claims insofar as they alleged that: (1) Eckert abandoned his obligations to perform work on South Street's behalf; (2) Eckert wrongfully recommended to South Street investors that South Street's assets should be liquidated; and (3) Eckert was *"currently* causing Greenwich Street substantially to compete with South Street for investors." *Id.* at *5 (emphasis in original). The District Court denied Eckert's summary judgment motion, without prejudice to renewal, insofar as Salovaara alleged that: (1) "Eckert *in the past* caused Greenwich Street substantially to compete with South Street for investors" and (2) "Eckert has caused, and is currently causing, Greenwich Street's investments to compete with South Street's investments." *Id.* (emphasis in original). With respect to these claims, the parties thereafter conducted discovery.

On December 9, 1996, the District Court held a pretrial conference with the parties to narrow the remaining disputes and determine whether trial would be necessary. During the conference, the District Court expressed some doubt that Salovaara could prove that South Street suffered economic damage as a result of the competition between Busse and Marcus Cable. In addition, the District Court stated that Salovaara had no basis to claim damages to South Street with respect to certain Greenwich Street investments in Flint, Michigan, and Buffalo, New York (the "Flint and Buffalo investments"). Al-

though Shoemaker conceded that Salovaara had no proof of damages with respect to the Flint and Buffalo investments, he nevertheless insisted that these investments were relevant for the purposes of showing Eckert's "state of mind" and "disregard for whether or not ... he was competing with and causing damage to the South Street funds." It appears that the District Court rejected this argument because the District Court later declared the Flint and Buffalo investments "off the table."

During the December 9, 1996 hearing, Eckert's counsel indicated that he would soon file a second summary judgment motion seeking dismissal of Salovaara's remaining claims. Near the close of the hearing, before setting a briefing schedule for Eckert's motion, the District Court warned Shoemaker that unsupported positions submitted by him and/or Salovaara could serve as grounds for sanctions under Rule 11 or § 1927. In addition, the District Court noted that while it had "stayed [its] hand with respect to attorney's fees" during the "first round," it would "take a careful look" during the "second round" at "whether any party [was] wasting any other party's time and money."

## C. The Second Summary Judgment Motion and Salovaara's Appeal on the Merits

Eckert filed a second summary judgment motion in January 1997, arguing, *inter alia*, that Salovaara had failed to establish any damages to South Street with respect to the competition between Busse and Marcus Cable. In addition, Eckert's motion sought vacatur of the preliminary injunction and leave to file a motion for attorney's fees and sanctions.

Salovaara opposed the motion on two legal grounds. First, relying on *New York State Teamsters Council Health & Hospital Fund v. Estate of DePerno*, 18 F.3d 179 (2d Cir.1994) (*"DePerno"*), Salovaara argued that once a court determines that an ERISA fiduciary has breached his fiducia-

ry duties—as, Salovaara contended, the District Court had done with respect to Eckert in its ruling on the motion for preliminary relief—the burden shifts to the fiduciary to show that the breach did not cause damage to the fund. Second, relying on *Gilliam v. Edwards*, 492 F.Supp. 1255 (D.N.J.1980), Salovaara argued that Eckert was obliged to disgorge the fees he had earned from South Street during any time he was in breach of his fiduciary duties as well as any profits he had made personally investing in Greenwich Street.

Salovaara concededly submitted no evidence of quantified economic loss to South Street arising out of the competition between Busse and Marcus Cable. *See* Brief. of Appellants at 10. Nevertheless, relying on (1) an affidavit from the President of Busse, Lawrence A. Busse; (2) deposition testimony of Marcus Cable's Senior Vice President, David L. Hanson; and (3) an affidavit submitted by Salovaara himself, Salovaara disputed Eckert's assertion that he had failed to prove any harm caused to South Street by Eckert's Greenwich Street activities. In the course of making these arguments, Salovaara mentioned Greenwich Street's Flint and Buffalo investments several times, notwithstanding the District Court's statement on December 9, 1996 that these issues were "off the table." For the most part, however, Salovaara confined his arguments with respect to these investments to the issue of Eckert's state of mind, and made no claim that the investments had caused damage to South Street.

By Opinion and Order filed May 29, 1998, approximately fourteen months after Eckert's motion was fully briefed, the District Court granted Eckert's motion for summary judgment in its entirety. *See Salovaara v. Eckert*, No. 94 Civ. 3430, 1998 WL 276186 (S.D.N.Y. May 28, 1998) (*"Salovaara III"*). As an initial matter, the District Court rejected Salovaara's readings of *DePerno* and *Gilliam. See id.* at *3–4, 8 n. 7. With respect to *DePerno*, the

District Court concluded, in an analysis that spanned three-and-a-half pages of its slip opinion, that *DePerno* did not mandate a shift in the burden of proof to the defendant once the plaintiff had shown a breach of fiduciary duty, as Salovaara had argued. Instead, the District Court held that, under *DePerno* and other Second Circuit precedent, a plaintiff "must demonstrate both breach of fiduciary duty and a *prima facie* case of loss to the fund before the burden shifts to the defendant on the issue of causation of loss." *Id.* at *4 (citing *DePerno*, 18 F.3d at 180–83; *Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 106 & n. 1 (2d Cir.1998) (Jacobs, J., concurring, joined by Meskill, J.)). With respect to *Gilliam*, the District Court ruled, in a footnote that filled almost a full page of the slip opinion, that disgorgement was unjustified absent a showing by the plaintiff of tangible economic loss caused by the defendant fiduciary's breach. *See id.* at *8 n. 7.

Turning to the evidence in the case, the District Court then concluded that Salovaara had failed to establish any proof of damages to support his ERISA claims. *See id.* at *5–8. First, rejecting Salovaara's argument that damages to South Street could be inferred from the competition between Busse and Marcus Cable, the District Court concluded that Salovaara had provided no evidence "of actual economic loss to [South Street] as a result of Greenwich Street's investment." *Id.* at *6. Next, construing Salovaara's memorandum in opposition to summary judgment as reasserting claims with respect to Greenwich Street's Flint and Buffalo investments, the District Court reiterated its earlier finding that these investments caused South Street no harm. *See id.* at *6–7. Finally, the District Court con-

strued Salovaara's affidavit in opposition to summary judgment as asserting a claim of detrimental reliance on Eckert with respect to the sale of South Street's investments in an entity called Granite Broadcasting, Inc. ("Granite Broadcasting"), and rejected the claim for two alternative reasons: because it effectively restated a claim that the District Court had previously dismissed (and a motion for reconsideration was untimely) and because Salovaara's affidavit was inconsistent with deposition testimony in a related lawsuit, in which he had "disclaimed any reliance on Eckert's counsel with regard to the sale of South Street's assets." *Id.* at *7–8.

In addition to granting summary judgment, the District Court granted Eckert's motion to vacate the preliminary injunction. Noting that Greenwich Street had sold its investments in Marcus Cable several weeks earlier (in May 1998), the District Court concluded that "there is no basis to maintain the preliminary injunction against Eckert." *Id.* at *8. Finally, the District Court granted Eckert leave to file a motion seeking attorney's fees under ERISA § 1132(g) and/or sanctions under Rule 11 and/or § 1927. *See Salovaara III*, 1998 WL 276186, at *9.

■ Thereafter, Salovaara timely moved for reconsideration of the District Court's order granting summary judgment, arguing that the District Court had erred in concluding that his affidavit concerning the Granite Broadcasting investment was inconsistent with his prior deposition testimony in a related action. In July 1998, the District Court denied Salovaara's motion, *see Salovaara v. Eckert*, No. 94 Civ. 3430, 1998 WL 1661141 (S.D.N.Y. July 27, 1998) ("*Salovaara IV* "), and Salovaara appealed from the District Court's final judgment on the merits.[4] By

---

**4.** In *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), the Supreme Court held that "a decision on the merits is a 'final decision' for purposes of [appeal] whether or not there remains for adjudication a request for attorney's fees attributable to the case." *Id.* at

202–03, 108 S.Ct. 1717; *see also* FED. R.APP P. 4(a)(4)(A)(iii) (noting that a motion for attorney's fees under Rule 54 of the Federal Rules of Civil Procedure tolls the time to appeal from a final judgment only "if the district court extends the time to appeal under Rule 58"). Accordingly, Salovaara's time to ap-

summary order filed June 24, 1999, this Court affirmed "substantially for the reasons stated by the district court." *Salovaara V*, 1999 WL 461820, at *1.

## D. The Fee and Sanctions Award

In June 1998, Eckert moved for payment by Salovaara of his attorney's fees for the entire litigation under ERISA § 1132(g), for sanctions against Salovaara and Shoemaker under Rule 11, and for sanctions against Shoemaker under § 1927. Salovaara filed a cross-motion for payment of the attorney's fees he incurred in prosecuting the preliminary injunction motion.

By Order filed May 27, 1999, the District Court granted Eckert "the full cost of this action pursuant to § 1132(g), in the amount of $466,599.00." *Salovaara v. Eckert*, No. 94 Civ. 3430, 1999 WL 33117364, at *4 (S.D.N.Y. May 24, 1999) ("*Salovaara VI*"). In addition, "as an alternative basis for its decision," *id.* at *5, the Court imposed a sanction of $92,343.50, equal to Eckert's expenses in connection with the second motion for summary judgment, on Salovaara and Shoemaker jointly and severally under Rule 11 and on Shoemaker under § 1927, *see Salovaara VI*, 1999 WL 33117364, at *5–9. Finally, the District Court denied Salovaara's cross-motion for fees. *See id.* at *4–5. Final judgment was entered on June 1, 1999, and this appeal followed.

## II.

■ On appeal, Salovaara and Shoemaker argue that: (1) Eckert was not entitled to fees under ERISA and that, in any event, the District Court's fee award was excessive; (2) the District Court erred in denying Salovaara's cross-motion for fees for the preliminary injunction motion;

peal from the District Court's decision on the merits began to run in July 1998, notwithstanding the fact that Eckert was granted leave to file a motion for attorney's fees and/or sanctions.

**5.** Section 1132(g)(1) states in relevant part:

(3) the District Court erred in imposing the sanction on Salovaara and Shoemaker under Rule 11; and (4) the District Court erred in imposing the sanction on Shoemaker under § 1927. We review each of the District Court's decisions for abuse of discretion. *See, e.g., Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987) (decision to grant or deny attorney's fees under ERISA); *Anita Founds., Inc. v. ILGWU Nat'l Retirement Fund*, 902 F.2d 185, 191 (2d Cir.1990) (the size of an attorney's fee award under ERISA); *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir.1999) (Rule 11); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir.1997) (Rule 11 and § 1927). This standard of review, however, "is not as simple as it may appear at first blush." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir.1999). That is, although the decision to impose sanctions—and, *a fortiori*, to grant attorney's fees—"is uniquely within the province of a district court, we nevertheless need to ensure that any such decision is made with restraint and discretion." *Id.* at 334.

## A. Attorney's Fees Under ERISA

■ Pursuant to 29 U.S.C. § 1132(g)(1), a court has discretion to award attorney's fees "to either party" in an ERISA action.[5] Like many of our sister circuits, we have held that the decision of whether to award attorney's fees is ordinarily based on five factors:

(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circum-

In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

stances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless,* 815 F.2d at 871; *see also, e.g., Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1458 (5th Cir.1995); *Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251, 257–59 (1st Cir.1986); *Secretary of Dep't of Labor v. King,* 775 F.2d 666, 669 (6th Cir.1985); *Marquardt v. North Am. Car Corp.,* 652 F.2d 715, 717 (7th Cir.1981); *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980). These factors are applicable regardless of which party seeks attorney's fees. *See Anita Founds.,* 902 F.2d at 188–89; *see also, e.g., Gray,* 792 F.2d at 258–59; *Carpenters S. Cal. Admin. Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.1984). *But cf. Meredith v. Navistar Int'l Transp. Corp.,* 935 F.2d 124, 128 (7th Cir. 1991) (noting that the Seventh Circuit has, in some cases, applied a different test when an ERISA defendant was seeking fees). As we explained in *Anita Foundations,* the test "provides sufficient latitude to review a fee request by allowing courts to consider which party is requesting fees, assess the relative culpability of the parties and address the potential deleterious effect of the fee award." 902 F.2d at 188.

Although the *Chambless* test applies to both plaintiffs and defendants in ERISA actions, courts have cautioned that the five factors "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *West v. Greyhound Corp.,* 813 F.2d 951, 956 (9th Cir. 1987) (internal quotation marks omitted); *see Anita Founds.,* 902 F.2d at 188–89 (noting that "the five factors will often balance against an employer seeking fees under ERISA" (citing cases)). For example, courts have found that the "culpability" of a losing plaintiff "significantly differs" from that of a losing defendant: "A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate. A losing plaintiff, on the other hand, will not necessarily be found 'culpable,' but may be only in error or unable to prove his case." *Marquardt,* 652 F.2d at 720; *see id.* at 720–21 (discussing the other four factors); *see also Russell,* 726 F.2d at 1416 (explaining "why trustees of benefit plans are more likely than employers to recover fees when the [five factors] are applied"). Because "ERISA was primarily intended to protect the interests of plan beneficiaries and participants," this "'bias' in the standard does not thwart the legislative injunctive that attorney's fees may be awarded to 'either' party in the court's discretion." *Gray,* 792 F.2d at 259. To the contrary, the "favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith—the purpose of ERISA being to promote the interests of plan beneficiaries and allow them to enforce their statutory rights." *Jones v. O'Higgins,* 736 F.Supp. 1243, 1245 (N.D.N.Y.1990); *see also Meredith,* 935 F.2d at 128–29 ("[W]e must keep in mind ERISA's essential remedial purpose: to protect beneficiaries of pension plans. Adherence to this policy often counsels against charging fees against ERISA beneficiaries since private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose." (internal quotation marks omitted)); *cf. Chambless,* 815 F.2d at 872 ("ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights.").

Without acknowledging that the *Chambless* test "will often balance against [a defendant] seeking fees under ERISA," *Anita Founds.,* 902 F.2d at 188–89, the District Court in the present case concluded that the five factors weighed in favor of granting Eckert attorney's fees. The District Court held that the fifth factor (whether the action conferred or sought to confer a "common benefit") was inapplicable to an ERISA defendant like Eckert, *see Salovaara VI,* 1999 WL 33117364, at

*3, and concluded that the second factor (ability to satisfy an award) was· "not at issue" because Salovaara conceded his ability to pay, *id.* at *2. With respect to the remaining three *Chambless* factors, the District Court ruled that: (1) "[t]he lack of evidentiary support for plaintiff's central arguments, plaintiff's reliance on testimony in this action that contradicted his testimony in another case, and plaintiff's introduction of arguments in his summary judgment papers that plaintiff's counsel foreswore in a conference before the Court, all suggest that plaintiff acted in bad faith"; (2) an award of fees "would serve to discourage litigants from bringing baseless claims" and from treating ERISA as "little more than a statutory hook upon which to hang [their] business disputes"; and (3) Eckert's position had greater merit because "the Court's analysis in [*Salovaara III*] found plaintiff's claims to be without support." *Id.* at *2. Based on these findings, the District Court granted Eckert's motion and ordered Salovaara to .pay Eckert's attorney's fees for the entire litigation—a total of $466,599.

 Although the degree of deference owed to a district court in these matters makes this case a close one, we hold that the District Court erred in determining that the first and third *Chambless* factors weighed in Eckert's favor and in concluding that the factors as a whole supported an award of attorney's fees to Eckert. First and foremost, we conclude that the District Court erred in finding that Salovaara proceeded in bad faith. In forming this judgment, the District Court relied heavily on the "lack of evidentiary support for [Salovaara's] central arguments." *Id.* at *2. However, Salovaara's failure to produce evidentiary support for his arguments—specifically, his lack of proof that South Street suffered any tangible economic loss as a result of Greenwich Street's investment in Marcus Cable— must be viewed in light of his reliance on *DePerno* and *Gilliam.* Salovaara read *De-Perno* to mean that once a plaintiff estab-

lishes that a defendant has breached his fiduciary duty, the burden of proof shifts to the defendant to prove that his breach caused no loss to the fund. Similarly, he read *Gilliam* to mean that once a breach of fiduciary duty is established, a defendant is required to reimburse the fund for, *inter ·alia,* the salary he received during the period of breach. Thus, on Salovaara's view of the law, he was *not required* to submit proof of South Street's tangible economic loss in order to defeat summary judgment, because the District Court had already found—in its opinion granting preliminary relief—that Eckert was in breach. *See, e.g., Salovaara I,* 1996 WL 14444, at *4 ("Eckert is *presently* violating his fiduciary·duties under ERISA, in that he has placed himself in a position in which his conflicting loyalties, to South Street and Greenwich Street, may pull him in different directions." (emphasis added)).

To be sure, for the reasons stated in *Salovaara III* (which we affirmed in *Salovaara V*), Salovaara's interpretations of *DePerno* and *Gilliam* proved to be wrong. However, in light of some broad language in each opinion, *see, e.g., DePerno,* 18 F.3d at 182 (noting that in the law of trusts, which applies to ERISA claims, "it has been held that once the beneficiaries have established their *prima facie* case by demonstrating the trustees' breach of fiduciary duty, the burden of explanation or justification shifts to the fiduciaries" (internal quotation marks, brackets, and ellipsis omitted)); *Gilliam,* 492 F.Supp. at 1266–67 (ordering the defendant trustee, who had improperly appointed himself a paid administrator of the plan, to disgorge the salary he had received in that position), we cannot say that . Salovaara's arguments were frivolous or made in bad faith. Indeed, in explaining why Salovaara's reliance on *DePerno* and *Gilliam* was misplaced, the District Court itself devoted three-and-a-half pages of its slip opinion to *DePerno* and a full-page footnote of analysis to *Gilliam. See Salovaara III,* 1998 WL 276186, at *3–4, 8 n. 7. Accordingly, the "lack of evidentiary support" for Salo-

vaara's central arguments does not amount to culpability or bad faith. *See Cline v. Industrial Maintenance Eng'g & Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000) ("[I]n order to avoid a finding of bad faith ..., plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim. While Appellants failed to prove any of their claims, ... a reasonable basis existed for Appellants to make their claims."); *cf. DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 414 (9th Cir.1994) (denying the appellee's request for attorney's fees under ERISA because the "[a]ppellants' claims were neither frivolous nor made in bad faith, and were supported by existing out-of-circuit law or good faith arguments to extend, modify, or reverse the law of this Circuit"); *Meredith*, 935 F.2d at 128 (holding that appellant did not pursue his appeal in bad faith: "True, [he] should have known that his chances of achieving a reversal ... were slim. Slim, but not utterly hopeless.").

■ Nor, in our view, did the District Court properly base its finding of bad faith on Salovaara's "introduction of arguments in his summary judgment papers that [his] counsel foreswore in a conference before the Court." *Salovaara VI*, 1999 WL 33117364, at *2. Shoemaker conceded at the December 9, 1996 conference that Salovaara had no proof that South Street suffered damage with respect to Greenwich Street's Flint and Buffalo investments. However, Shoemaker emphatically insisted at the conference that Greenwich Street's investments *were* relevant to the question of Eckert's state of mind, and Salovaara's memorandum in opposition to summary judgment more or less relied on the investments only to this extent. There is a passing mention in Salovaara's memorandum of damages suffered by South Street as a result of Greenwich Street's Flint and Buffalo investments; that is, in a

section of Salovaara's memorandum titled "There Are Issues of Fact Concerning Eckert's Bad Faith Advice That the South Street Funds Should Dump Their Media Investments and the Damages Caused Thereby," Salovaara argued that there were issues of fact with respect to "the. damages caused to South Street by [Eckert's] faithlessness [in urging South Street to sell certain media properties while pursuing related investments in Flint and Buffalo on Greenwich Street's behalf]." This language alone, however, is insufficient to support a finding of bad faith.

■ In addition, we conclude that the District Court erred in holding that the third *Chambless* factor—"whether an award of fees would deter other persons from acting similarly under like circumstances," *Chambless*, 815 F.2d at 871— favored Eckert. The underlying premise of the District Court's conclusion was that Salovaara's claims were meritless and that he had treated ERISA as "little more than a statutory hook upon which to hang his business disputes" with Eckert. *Salovaara VI*, 1999 WL 33117364, at *2. However, for the reasons we discussed above, among others, Salovaara's claims were not entirely devoid of merit. Indeed, the District Court itself implicitly conceded as much in granting Salovaara's motion for a preliminary injunction. Moreover, in a related action, the New Jersey Superior Court, following a 23-day bench trial, awarded Salovaara $4 million in damages against Eckert at least in part based on the conclusion that Eckert, in assuming a management position at Greenwich Street, had breached his fiduciary duties to the partnership that ran South Street. *See Salovaara v. Eckert*, No. MRS C-29-94, slip op. at 21–22 (N.J.Super.Ct. July 14, 1998).[6] Under these circumstances, there-

---

6. To be sure, the issues in the New Jersey action and the instant action differ slightly. For example, Eckert's duties to Salovaara and the partnership that ran South Street were not necessarily co-extensive with the duties he

owed to the beneficiaries of the pension funds investing in South Street. However, the New Jersey Court's judgment—which was based, in part, on the Court's findings that "there is some overlap in areas where the various

fore, an award of fees to Eckert would do little "to discourage litigants from bringing baseless claims." *Salovaara VI*, 1999 WL 33117364, at *2. *See also Russell*, 726 F.2d at 1416 ("Consideration of the third factor, deterrence, ... suggests that fee awards very likely will be less often justified for employers than for trustees.... Plaintiff-trustees ... generally will be sufficiently deterred from instituting vexatious suits by the absence of personal gain therefrom and the likelihood that they will have to pay their own fees and costs should they not prevail."); *accord Marquardt*, 652 F.2d at 721.

■] In fact, where, as in this case, an ERISA plaintiff has pursued a colorable (albeit unsuccessful) claim, the third *Chambless* factor likely is not merely neutral, but weighs strongly *against* granting fees to the prevailing defendant. Awarding fees in such a case would likely deter beneficiaries and trustees from bringing suits in good faith for fear that they would be saddled with their adversary's fees in addition to their own in the event that they failed to prevail; this, in turn, would undermine ERISA's essential remedial purpose of protecting beneficiaries of pension plans. *See, e.g., Gibbs v. Gibbs*, 210 F.3d 491, 505 (5th Cir.2000) (concluding that the district court had erred in using "the third deterrent factor as a sword to discourage beneficiaries" from pursuing certain meritless claims, "rather than as this factor was intended to be used, as a shield, to protect beneficiaries from the fear of having to pay to pursue an important ERISA claim in the event of failing to prevail. Clearly, Congress intended the fee provisions of ERISA to encourage beneficiaries to assert their rights without fear of being responsible for the fees and costs of their opponent's attorneys if they failed to prevail."). This consideration is even more significant in a case such as this, where the

plaintiff is a fiduciary under ERISA. As a co-fiduciary, Salovaara not only had an affirmative obligation to "use reasonable care to prevent a co-trustee from committing a breach," 29 U.S.C. § 1105(b)(1)(A), but he also faced the risk of personal liability if he knew of, and failed to remedy, his co-trustee's breach, *see id.* § 1105(a). To award fees in such a case, absent clear evidence of culpability, would create a Hobson's choice for the fiduciary with a good faith belief that his co-fiduciary has breached his duty: by bringing a lawsuit, he would risk the imposition of expensive attorney's fees if he were to lose, but by doing nothing, he would risk the imposition of liability under § 1105(a).

■] To be sure, some aspects of the record in the present case support the District Court's fee award to Eckert. For instance, notwithstanding Salovaara's success on the preliminary injunction motion, the "relative merits" plainly favor Eckert as the prevailing party. In addition, as discussed below, we believe the District Court was justified in concluding that Salovaara's affidavit contradicted his prior deposition testimony. Nevertheless, in light of the considerations discussed above, we conclude that these factors and the passing reference in Salovaara's memorandum to the Flint and Buffalo investments do not, by themselves, justify the District Court's decision to grant fees to Eckert. There are surely instances in which an award of attorney's fees against an ERISA plaintiff would be warranted. *See, e.g., Anita Founds.*, 902 F.2d at 189–91 (upholding a fee award where, *inter alia*, the plaintiffs "did not demonstrate a colorable legal position" and their suit "was in direct contravention of settlement agreements that were several years old"); *Operating Eng'rs Pension Trust v. Gilliam*, 737 F.2d 1501, 1505–06 (9th Cir.1984) (upholding a

funds can make investments" and that "Eckert's activities for the Greenwich Street fund *could not help but place him in competition with [the partnership's] funds* [including South Street]," *Salovaara*, No. MRS C–29–94,

slip op. at 22 (emphasis added)—lends substantial weight to the conclusion that Salovaara's claims here were colorable and prosecuted in good faith.

fee award where, *inter alia*, the plaintiff's prosecution of the suit "was grossly unfair" and its legal position "was without merit"). This, however, is not such a case. Accordingly, we reverse the judgment of the District Court to the extent that it granted Eckert's request for attorney's fees under ERISA.[7]

In contrast, we affirm the District Court's denial of Salovaara's cross-motion for attorney's fees with respect to the preliminary injunction motion. In denying Salovaara's motion, the District Court properly considered all five of the *Chambless* factors and concluded that only the second (Eckert's ability to satisfy an award) supported an award. *See Salovaara VI*, 1999 WL 33117364, at *4–5. The District Court also noted that although the preliminary injunction was ultimately vacated on mootness grounds, rather than on the merits, Salovaara's inability to establish any damages to South Street arising from the competition between Busse and Marcus Cable left "little doubt ... that the preliminary injunction would have been vacated even if the sale had not occurred." *Id.* at *4. We cannot conclude that the District Court abused its discre-

tion in reaching these conclusions or in denying Salovaara's cross-motion. Accordingly, we affirm the judgment of the District Court in this respect.

## B. Sanctions Under Rule 11 and § 1927

As an "alternative basis for its decision," *Salovaara VI*, 1999 WL 33117364, at *5, the District Court imposed a sanction of $92,343.50—the cost of Eckert's second summary judgment motion—on Salovaara and Shoemaker jointly and severally under Rule 11 and on Shoemaker under § 1927. Because the standards for Rule 11 and § 1927 differ in several important respects, *see, e.g., United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1343–46 (2d Cir.1991), and the District Court relied on Rule 11 and § 1927 as alternative bases for its sanction on Shoemaker, we will address each provision separately.

### 1. Rule 11

Rule 11 permits a court to impose sanctions upon attorneys, law firms, or parties for making or causing to be made certain improper representations to the court.[8]

---

7. Had we upheld the District Court's decision to grant Eckert attorney's fees, we would have faced the serious question of whether the amount of fees awarded—for the entire litigation, notwithstanding Salovaara's success on the preliminary injunction motion—was excessive. *Cf. Chambless*, 815 F.2d at 872–73 (holding that the District Court should have awarded the plaintiff attorney's fees with respect to the amount of time plaintiff's counsel devoted to plaintiff's one successful claim, even though most of his claims were found to be without merit). In light of our conclusion that the District Court erred in granting Eckert fees at all, however, we need not—and do not—reach this issue.

8. Rule 11 provides in relevant part:
 **(b) Representations to Court.** By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
 (1) it is not being presented for any improper purpose, such as to harass or to

cause unnecessary delay or needless increase in the cost of litigation;
 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
 (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
 (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
 **(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Without specifying the applicable provision or provisions of Rule 11(b), the District Court imposed the sanction under Rule 11 on Salovaara and Shoemaker based on their "continued advocacy of claims without any evidentiary support in their opposition to defendant's [second] motion for summary judgment." *Salovaara VI*, 1999 WL 33117364, at *6. Specifically, the District Court found that: (1) Salovaara and his counsel "proceeded on a claim that was 'utterly lacking in support'"; (2) "these baseless claims were made on the basis of plaintiff's own affidavit"; and (3) Salovaara asserted a claim (through his affidavit) "that contradicted his sworn testimony in another action." *Id.* at *6–8.

 Insofar as the District Court imposed the Rule 11 sanction for the last of these three reasons—namely, that Salovaara's affidavit contradicted his prior deposition testimony in a related action—we cannot conclude that the District Court abused its discretion. *See, e.g., Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir.2000) (affirming Rule 11 sanctions imposed by the District Court on the plaintiffs and their trial counsel for "fil[ing] affidavits . . . in which the plaintiffs contradicted their earlier deposition testimony and interrogatory answers"); *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1474 (2d Cir. 1988) (noting that a court may sanction a represented party if the party "had actual

knowledge that filing the paper constituted wrongful conduct, *e.g.*, the paper made false statements or was filed for an improper purpose"), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). In his affidavit, Salovaara averred that he had relied on Eckert's advice to sell South Street's investments in Granite Broadcasting and that, had he not done so, South Street "would have obtained a higher price for its Granite holdings." By contrast, in an earlier deposition in a related action, an excerpt of which is set out in the margin, Salovaara testified that he had *never* relied on Eckert's advice with respect to selling at "fire sale prices." [9]

 Salovaara argues, as he did before the District Court in his motion for reconsideration, that his deposition testimony was "too diffuse and disjointed with respect to precisely which events are related to [his] 'fire sale prices' testimony to allow for the conclusion that the affidavit and the deposition excerpt are inconsistent." Brief of Appellants at 44. Salovaara contends instead that the deposition testimony likely referred to an investment made by South Street in an entity called Bucyrus–Erie, because he referred to Bucyrus–Erie later in the deposition in discussing "fire sale prices." [10] The District Court, howev-

---

9. [SALOVAARA]: [Eckert has] made suggestions that appear to be driven by his own interests rather than the interests of the funds

 [COUNSEL]: What suggestions has he made?
 [SALOVAARA]: He's made suggestions with respect to selling securities that are in competition with his investments over at Greenwich Street.
 [COUNSEL]: Has he in any way attempted to dissipate any of the assets of the funds?
 [SALOVAARA]: Yes. . . . He's suggested selling at fire sale prices, at prices lower than we could get by not selling.
 [COUNSEL]: *Have you ever followed any of the suggestions that Mr. Eckert has*

made with respect to any of those sales or any of those trades that you referred to?
 [SALOVAARA]: *No.*
 (emphasis added).

10. Eckert argues that Salovaara is collaterally estopped from making this argument because "the very same issue was already resolved in this Court's affirmance" of the judgment on the merits. Brief of Appellee at 40–41 (citing *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 158 (7th Cir.1995) (Posner, J.) (noting that issues decided in a final order that is affirmed on appeal are generally entitled to res judicata or collateral estoppel effect in subsequent proceedings for attorney's fees)). However, we did not discuss the alleged inconsistency between Salovaara's affidavit and

er, rejected this argument based on a reading of the deposition testimony "in the context of the deposition transcript as a whole." *Salovaara IV,* 1998 WL 1661141, at *1. In light of the fact that Salovaara answered in the negative when asked whether he had "ever" followed "any" of Eckert's suggestions about selling at fire sale prices, as well as the fact that Salovaara's testimony concerning Bucyrus–Erie appears 129 pages after the testimony at issue, we cannot say that this conclusion was an abuse of discretion.

 In contrast, substantially for the reasons we reversed the District Court's award of attorney's fees to Eckert, we conclude that the District Court otherwise erred in treating Salovaara's opposition to Eckert's second summary judgment motion as a basis for sanctions under Rule 11. The standard for triggering the award of fees under Rule 11 is "objective unreasonableness." *Margo,* 213 F.3d at 65. Although Salovaara's interpretations of *De-Perno* and *Gilliam* were ultimately held to be wrong, they were not objectively unreasonable and his failure to submit any evidence of tangible economic loss to South Street must be viewed with that in mind. "[H]owever faulty," his positions "were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against." *Mareno v. Rowe,* 910 F.2d 1043, 1047 (2d Cir.1990); *see also Securities Indus. Ass'n v. Clarke,* 898 F.2d 318, 321 (2d Cir.1990) ("A distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable." (internal quotation marks omitted));

*cf. Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 830–31 (2d Cir.1992) (reversing an award of sanctions on the ground that, in the absence of controlling authority to the contrary, the party had a good faith basis to press a legal argument supported by a single decision of a state court).[11]

From the District Court's opinion, it is not apparent whether the Court would have, pursuant to Rule 11, imposed $92,343.50 in sanctions—or any sanction at all—solely on the ground that Salovaara's affidavit contradicted his prior deposition testimony in another lawsuit. In addition, the District Court made no findings with respect to the disputed question of whether Shoemaker was aware of the conflict between Salovaara's affidavit and Salovaara's earlier deposition testimony in the other lawsuit (in which Salovaara was represented by a different attorney). *Cf. Schlaifer Nance,* 194 F.3d at 340 (holding that the use of a witness's testimony by the appellant attorneys could not "be characterized as deceptive absent additional evidence indicating that the testimony's inconsistencies were intentional lies and *that appellants were aware of this*" (emphasis added)). For these reasons, and mindful of the fact that Rule 11(c)(2) limits the sanctions that may be imposed for a violation of Rule 11 "to what is sufficient to deter repetition of [the wrongful] conduct or comparable conduct by others similarly situated," we vacate the sanction insofar as it was imposed on Salovaara and Shoemaker under Rule 11 and remand for further proceedings. On remand, the District Court should decide whether, consistent with this opinion, the contradiction between Salovaara's affidavit and his earlier

---

his deposition testimony in *Salovaara V.* Moreover, the alleged inconsistency was an *alternative* ground for the District Court's judgment on the merits with respect to the Granite Broadcasting claim (the principal ground being that the claim was previously denied). Accordingly, it cannot be said that "the issue in question was actually and necessarily decided" in the prior appeal. *Hachamovitch v. DeBuono,* 159 F.3d 687, 695 (2d Cir.1998).

**11.** Further, we note that insofar as the District Court may have based its ruling on Rule 11(b)(2)—for frivolous "claims, defenses, and other legal contentions"—it erred in imposing sanctions on Salovaara himself. *See* FED. R.CIV.P. 11(c)(2)(A) ("Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).").

deposition testimony justifies reimposing sanctions at all and, if so, whether the contradiction justifies reimposing sanctions of some amount on Salovaara alone or on Salovaara and Shoemaker jointly and severally.[12]

## 2. Section 1927

As noted, the District Court also relied on § 1927 in imposing the sanction of $92,343.50 on Shoemaker.[13] The District Court based this ruling on a finding that Shoemaker had acted in bad faith in opposing Eckert's second summary judgment motion and in seeking reconsideration of the District Court's decision. *See Salovaara VI*, 1999 WL 33117364, at *8–9. Specifically, the District Court found that Shoemaker had: (1) reasserted claims concerning the Flint and Buffalo investments after foreswearing them at the December 9, 1996 conference; (2) reasserted, both in opposition to summary judgment and in seeking reconsideration, the claim concerning Granite Broadcasting despite the fact that it had been previously dismissed; and (3) "significantly obfuscated the issues in this case by raising issues that had no evidentiary support." *Id.* at *9.

We conclude that § 1927 cannot serve as the basis for sanctions against Shoemaker. It is well established that the imposition of sanctions under § 1927 requires "a clear showing of bad faith on the part of an attorney," and that bad faith may be inferred "only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Shafii v. British Air-*

*ways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996) (internal quotation marks omitted); *accord Schlaifer Nance*, 194 F.3d at 336–38. Here, for the reasons discussed above, the District Court's finding of bad faith is unsustainable; Shoemaker reasonably opposed summary judgment in reliance on *DePerno* and *Gilliam* and did not, as the District Court found, reassert the claims concerning the Flint and Buffalo investments after foreswearing them. Even assuming that Shoemaker improperly reasserted a claim concerning Granite Broadcasting (he argues that the two claims differed in material respects), such conduct alone is insufficient to warrant sanctions under § 1927. *Cf. Schlaifer Nance*, 194 F.3d at 340 (reversing a sanction imposed under § 1927 and concluding that the attorney's continuation of proceedings was nothing more than "the result of poor legal judgment").

## III.

In sum, for the reasons stated above, we:

(1) REVERSE the District Court's award of attorney's fees to Eckert under ERISA § 1132(g)(1);

(2) AFFIRM the District Court's denial of Salovaara's cross-motion for attorney's fees under ERISA § 1132(g)(1);

(3) VACATE the sanction of $92,343.50 insofar as it was imposed on Salovaara and Shoemaker under Rule 11 of the Federal Rules of Civil Procedure and REMAND for the District Court to consider whether sanctions of some amount consistent with Rule 11(c)(2) should be

---

12. We express no views on these issues. In the event that the District Court does reimpose sanctions, however, we direct the Court to specify the applicable provision or provisions of Rule 11(b).

13. Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unrea-

sonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. By the statute's terms, an award under § 1927 may be made "only against attorneys or other persons authorized to practice before the courts." *Schlaifer Nance*, 194 F.3d at 336 (internal quotation marks omitted).

reimposed and, if so, whether they should be reimposed on Salovaara alone or on Salovaara *and* Shoemaker jointly and severally based on the inconsistency between Salovaara's affidavit and his prior deposition testimony; and

(4) REVERSE the sanction of $92,343.50 insofar as it was imposed on Shoemaker under 28 U.S.C. § 1927.

We decline to award costs of this appeal to either party. *See* FED. R.APP. P. 39(a)(4).