322 F.3d 199
 Maureen E. LEYDA, individually and as Executrix of the Estate of Charles L. Leyda, Plaintiff-Appellant-Cross-Appellee,
v.
ALLIEDSIGNAL, INC., Defendant-Appellee-Cross-Appellant.
 Docket No. 02-7408.
 Docket No. 02-7496.
 United States Court of Appeals, Second Circuit.
 Argued: January 15, 2003.
 Decided: February 28, 2003.
 
 Thomas G. Moukawsher, Moukawsher & Walsh, Groton, Connecticut, for Plaintiff-Appellant-Cross-Appellee.
 Lissa J. Paris, Hartford, Connecticut (Everett E. Newton, Matthew J. Budzik, Murtha Cullina, Hartford, Connecticut, on the brief), for Defendant-Appellee-Cross-Appellant.
 Before: KEARSE and B.D. PARKER, Circuit Judges.*
 KEARSE, Circuit Judge.
 
 
 1
 Plaintiff Maureen E. Leyda ("Mrs.Leyda"), suing individually and as executrix of the estate of her late husband Charles L. Leyda ("Leyda"), appeals from so much of a judgment of the United States District Court for the District of Connecticut, Janet C. Hall, Judge, as denied her attorney's fees as the prevailing party in this action against defendant AlliedSignal, Inc. ("AlliedSignal"), for violation of its duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461 (1994), to disclose to Leyda the terms of an employee benefit plan. AlliedSignal cross-appeals from so much of the judgment as (a) ruled that AlliedSignal failed to comply with ERISA's disclosure provisions, and (b) awarded Mrs. Leyda $62,250 in damages under 29 U.S.C. § 1132(a)(1)(B). AlliedSignal contends principally that § 1132(a)(1)(B) does not authorize an award of damages in excess of the amount of benefits to which a plan participant is entitled under the benefit plan ("extracontractual damages"), and that, in any event, the district court erred in finding that AlliedSignal failed to comply with ERISA. On her appeal, Mrs. Leyda contends that the denial of attorney's fees was an abuse of discretion. For the reasons that follow, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 To the extent pertinent to these appeals, the events, as found by the district court, are largely undisputed and included the following.
 
 A. The Events
 
 3
 From 1989 through September 1994, Leyda was employed by Textron, Inc. ("Textron"), in its Stratford, Connecticut facility. Leyda was eligible to participate in Textron's life insurance benefit plan, and he chose a level of benefits that would provide coverage at a rate three times his approximately $40,000 annual salary. His coverage thus amounted to about $120,000. He designated Mrs. Leyda as the policy's beneficiary.
 
 
 4
 In September 1994, Textron's assets were purchased by AlliedSignal. The asset purchase agreement stated that AlliedSignal would offer most Textron employees employment "on substantially the same terms and conditions" under which they were employed by Textron on the date of the purchase. Leyda was one of roughly 1,500 Textron employees retained by AlliedSignal to work at the Stratford facility. AlliedSignal continued Textron's employee benefits through the end of 1994 but replaced the Textron benefit plan with AlliedSignal's own benefit plan in January 1995. AlliedSignal's plan provided no-cost life insurance coverage equal to only 1½ times an employee's salary. Employees had the option to enroll in, and pay the premium for, an AlliedSignal group universal life ("GUL") insurance program that provided additional coverage of one-to-five times the employee's base salary.
 
 
 5
 In anticipation of the shift to the AlliedSignal benefit plan, AlliedSignal held meetings on November 7, 8, and 9, 1994, for its employees who had been Textron employees. Those meetings focused on specific benefits available at AlliedSignal, including basic life insurance.
 
 
 6
 AlliedSignal mailed notice of the meetings to each employee using addresses from payroll records and posted notices on bulletin boards and video monitors. At these meetings, AlliedSignal distributed summary plan descriptions, enrollment forms, and beneficiary designation forms. Several hundred employees attended each meeting, and there were four meetings per day over the course of three days. No one took attendance at these meetings.
 
 
 7
 Additional copies of all materials distributed at the meetings were left at the facility. Supervisors tracked employees on sick leave, traveling, or on extended leave for the day assigned to that department's meeting. A package of materials was sent first class to those employees' home or work area. Packages were also mailed to employees that notified the human resources department that they had a schedule conflict. At the request of specific employees, AlliedSignal would hold make-up meetings to discuss the benefits.
 
 
 8
 Trial Decision dated November 9, 2001 ("Trial Decision"), at 3-4.
 
 
 9
 Leyda, however, never received a summary plan description for the AlliedSignal plan, which would have informed him that his Textron life insurance had been replaced by AlliedSignal's coverage with far lower benefits. He did not receive a package of benefit materials at any of the meetings or in the mail; he did not request or receive a make-up session. He enrolled in the GUL program in November 1994 and opted for coverage equal to his approximately $40,000 salary, believing that this provided coverage in addition to the $120,000 coverage for which he had opted at Textron.
 
 
 10
 Between 1994 and 1997, Leyda had opportunities to obtain additional life insurance coverage by increasing his GUL coverage or by purchasing a policy offered in connection with a new mortgage. He declined these opportunities because he believed that the employment-related life insurance coverage he had already obtained totaled $160,000. Leyda died in 1997. Mrs. Leyda received approximately $40,000 in benefits from his GUL policy plus $60,000 from AlliedSignal's basic life insurance coverage, for a total of $100,000, instead of the $160,000 that Leyda had believed the AlliedSignal benefits provided.
 
 
 11
 Mrs. Leyda commenced the present action in 1999 alleging, inter alia, that AlliedSignal, as administrator of its employee benefit plan, violated 29 U.S.C. § 1024 by failing to provide Leyda with a summary plan description that would have disclosed the lower benefits provided by the AlliedSignal plan, and that Leyda, in not purchasing additional insurance, had relied on AlliedSignal to his detriment. The complaint asserted that Mrs. Leyda was entitled to "injunctive relief under 29 U.S.C. [§]1132(a)(3), and/or the plaintiff has no adequate remedy at law" (Complaint ¶ 21); and it requested, inter alia, "[r]estitution," attorney's fees, and "such other and further relief as the court may deem just" (id. WHEREFORE ¶¶ 1, 3, 5).
 
 B. The District Court's Rulings
 
 12
 Following a bench trial, the district court found the facts set forth above. The court noted that federal law requires plan administrators to distribute summary plan descriptions to participants, Trial Decision at 10 (citing 29 U.S.C. § 1024(b)(1)), and that this means that the material "`must be sent by a method or methods of delivery likely to result in full distribution'" and that the "`administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants,'" Trial Decision at 11 (quoting 29 C.F.R. § 2520.104b-1(b)(1) (2001)). The court stated that these regulations
 
 
 13
 focus on actual receipt of the plan documents, not notice of an opportunity to obtain the documents or notice of the documents['] general availability. [29 C.F.R. § 2520.104b-1(b)(1)] ("[I]n no case is it acceptable merely to place copies of the material in a location frequented by participants.").
 
 
 14
 Trial Decision at 11. The court concluded that the administrator's "process for disclosing the plan documents should be calculated to reach every individual without gaps where employees could potentially miss the distributed material." Id. at 12.
 
 
 15
 The court found that AlliedSignal's method of distributing the "notice" of its scheduled meetings — mailing the notices to the addresses in the employees' payroll records — made it likely that there would be full distribution of the meeting notices, id. (emphasis in original), and that it was thus likely that Leyda received notice of the meetings. But it stated that "the court cannot infer that he actually received the [required plan] documents because notice of availability does not equate to receipt." Id. After describing the methods used by AlliedSignal — including mailing the meeting notices, following up with respect to employees who had been on trips, sick leave, or extended leave on the meeting dates, providing an opportunity to approach the human resources department about make-up meetings, and making plan documents generally available in the human resources department — the court found that these methods were not reasonably calculated to result in actual distribution of the materials to all employees, because it was not reasonable to assume that, out of 1,500 employees, the only persons not attending the meetings would be those on trips, sick leave, or extended leave. The court found that "Leyda was not on sick leave, traveling, or on extended leave on the days of the meetings," id. at 13 n. 1, but that he did not attend any of the meetings, see id. at 4; see also Ruling on Plaintiff's Request for Attorney's Fees, dated March 14, 2002 ("Fee Decision"), at 5 ("the court reasonably inferred that Mr. Leyda received notice of the meetings, but did not attend"). The court found that Leyda did not receive a copy of the summary plan description. See, e.g., Trial Decision at 4, 11-12, 16. It stated that
 
 
 16
 [f]or any number of reasons, including a busy schedule or lack of awareness as to the importance of the meeting, employees that were not on sick leave, traveling, or on extended leave may not have attended the benefits meetings. Therefore, the method used by AlliedSignal was not calculated to result in full distribution because it did not take into account reasonable factors that would lead employees to miss the meetings.
 
 
 17
 Id. at 13-14 (footnote omitted) (emphasis added). And because "[n]o one took attendance at these meetings," id. at 3, AlliedSignal had no way of knowing how many employees, other than those who were on sick leave, on extended leave, or traveling, had failed to attend.
 
 
 18
 The court noted that AlliedSignal's "witnesses differed as to the reasonableness of taking attendance," but it found that "the administrative burden imposed by requiring attendance sheets does not outweigh the reasonableness of such sheets for ensuring full distribution of the summary plan description." Id. at 14. The court also noted that AlliedSignal could, alternatively, have ensured full distribution simply by requiring participants to affirmatively enroll in its programs rather than providing automatic enrollment, and requiring them, on the enrollment form, to acknowledge receipt of the plan documents. The court found that it was "unlikely that AlliedSignal's methods would result in full distribution" and that "[i]ts methods were not reasonably calculated to result in actual receipt ...." Id. As Leyda had not received a summary plan description, the court concluded that AlliedSignal had violated its duty of disclosure to Leyda. See id. at 14, 16-17.
 
 
 19
 The court also found that "[b]ecause AlliedSignal failed to disclose the summary plan description, Mr. Leyda did not realize that his benefits changed after the takeover of Textron"; that that lack of disclosure led him to believe that he still had "the $120,000 coverage he had under the Textron policy and what he thought was the additional $40,000 GUL policy"; and that Leyda declined offers of additional coverage because he believed he already had a total of $160,000 in employment-related coverage. Id. at 16. The court found that AlliedSignal's failure, in violation of ERISA, to provide Leyda with a summary plan description thus caused harm, and that Mrs. Leyda was entitled to damages under 29 U.S.C. § 1132(a)(1)(B).
 
 
 20
 The court calculated that, in light of Leyda's final salary at AlliedSignal, the damages totaled $62,250, see id. at 20-21, and judgment was entered in favor of Mrs. Leyda in that amount, plus interest. However, as discussed in Part II.C. below, the court declined to award Mrs. Leyda attorney's fees.
 
 II. DISCUSSION
 
 21
 Mrs. Leyda has appealed, challenging the district court's refusal to award her, as the prevailing party, attorney's fees under 29 U.S.C. § 1132(g)(1). AlliedSignal has cross-appealed, contending (1) that as a matter of law a plan beneficiary cannot recover extracontractual damages under 29 U.S.C. § 1132(a)(1)(B), and (2) that the district court erred in concluding that AlliedSignal violated ERISA's disclosure provisions. For the reasons that follow, we decline to entertain AlliedSignal's first contention because it was not raised in the district court; we reject its second contention because the district court's findings are not clearly erroneous; and we reject Mrs. Leyda's contentions in support of her appeal because we are unpersuaded that the denial of attorney's fees in this case was an abuse of discretion. Because Mrs. Leyda's appeal would be moot if AlliedSignal's challenges to the district court's decision on the merits were sustainable, we address the cross-appeal first.
 
 
 22
 A. The Availability of Damages Under § 1132(a)(1)(B)
 
 
 23
 The district court ruled that Mrs. Leyda was entitled to $62,250 as damages under 29 U.S.C. § 1132(a)(1)(B), representing the difference between the insurance coverage Leyda believed he had and the insurance coverage he actually acquired under the AlliedSignal plan. To the extent pertinent here, § 1132(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). AlliedSignal contends that this section does not authorize an award of extracontractual damages, i.e., damages above the level of plan benefits to which the participant actually subscribed. For the reasons that follow, we decline to resolve this legal issue because AlliedSignal did not make this argument in the district court.
 
 
 24
 AlliedSignal correctly notes that the complaint itself did not cite § 1132(a)(1)(B) but rather asked for, inter alia, "injunctive relief under 29 U.S.C. [§ ]1132(a)(3)" and "[r]estitution" (Complaint ¶ 21 and WHEREFORE ¶ 1). However, Mrs. Leyda plainly sought damages beyond the insurance that Leyda acquired under the AlliedSignal plan, and her reliance on § 1132(a)(1)(B) was made clear and explicit well in advance of trial.
 
 
 25
 Some 10 months prior to trial, the parties submitted their Joint Trial Memorandum, in which Mrs. Leyda cited both § 1132(a)(3) and § 1132(a)(1)(B). She stated that she sought relief based on the level of benefits that Leyda believed he had secured. Her proposed conclusions of law included the following:
 
 
 26
 5. Failure to meet the disclosure requirements of 29 U.S.C. § 1024(b)(1) constitutes a breach of fiduciary duty actionable under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) when the failure to disclose prejudices the participant or beneficiary ....
 
 
 27
 . . . .
 
 
 28
 8. Accordingly, the plaintiffs are entitled to equitable relief pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). Consequently, the plaintiffs are entitled to restitution in the form of benefits due under the former Textron plan ....
 
 
 29
 (Joint Trial Memorandum dated November 15, 2000, at 33-34, ¶¶ 5, 8 (emphases added).) In the section of the Joint Trial Memorandum setting forth AlliedSignal's proposed conclusions of law, AlliedSignal did not take the position that § 1132(a)(1)(B) as a matter of law afforded no basis for the requested relief; AlliedSignal did not mention § 1132(a)(1)(B) at all.
 
 
 30
 Approximately one month before trial, Mrs. Leyda submitted a statement entitled Plaintiff's Claim for Damages, stating in part as follows:
 
 
 31
 In accordance with the order of the Court on July 24, 2001, the plaintiff hereby submits the following summary of her claim for damages.
 
 
 32
 1. The plaintiff claims the sum of $63,209.54 in restitution and/or lost benefits.
 
 
 33
 (Plaintiff's Claim for Damages dated August 23, 2001, at 1.) AlliedSignal thereafter submitted its "[r]eply to plaintiff Maureen E. Leyda's damage claim against AlliedSignal," and took the position that Mrs. Leyda was not entitled to damages because AlliedSignal had in fact performed its duties. (AlliedSignal's Reply to Plaintiff's Damage Claim, dated September 12, 2001, at 1 ("AlliedSignal met its obligations to the plaintiff and therefore AlliedSignal does not owe the plaintiff any damages." (emphasis added)).) There was no suggestion that Mrs. Leyda's claim for damages was beyond the scope of § 1132(a)(1)(B) because she sought a sum based on more coverage than Leyda had acquired under the AlliedSignal plan. Instead, AlliedSignal argued that, if it were found to have violated ERISA, the allowable amount of damages would be a lower extracontractual sum than Mrs. Leyda requested because Leyda's no-cost coverage under the Textron policy was really two, not three, times his salary. The reply stated that Mrs. Leyda's "maximum potential damages" were $20,000, i.e., "the difference between Textron's basic, no cost insurance of two times salary ($80,000) and AlliedSignal's basic, no cost insurance of 1.5 times salary ($60,000)." (Id. at 3.) As that $20,000 was above the coverage that Leyda had actually acquired under AlliedSignal's plan, this proposed measure of damages could not have alerted the court to AlliedSignal's present argument that § 1132(a)(1)(B) does not authorize any award of damages above the level to which the plan participant subscribed. To the contrary, in that reply, AlliedSignal stated, "AlliedSignal does not object to measuring damages (if any are due) by comparing either the `no cost' insurance levels (2 times [at Textron] vs. 1.5 times [at AlliedSignal]), or the total insurance levels (2.5 times [at AlliedSignal] vs. 3 times [at Textron])." (Id. n. 1.)
 
 
 34
 After trial, AlliedSignal submitted additional proposed findings and conclusions, including the following:
 
 
 35
 A procedural violation of ERISA's reporting and disclosure requirements does not give rise to a damage claim absent some showing of prejudice or harm by the plaintiff.
 
 
 36
 (AlliedSignal's Supplemental Findings of Fact and Conclusions of Law dated September 26, 2001, at 10-11, ¶ 7 (emphasis added).) This AlliedSignal submission, like its predecessors, contained no mention of 29 U.S.C. § 1132(a)(1)(B), nor any suggestion that that section did not authorize Mrs. Leyda's claim for damages. Indeed, the implication of the "absent some showing" clause was that damages of the type she requested are in fact available to one who shows that a violation of the disclosure statements caused harm.
 
 
 37
 On November 9, 2001, the district court ruled in favor of Mrs. Leyda on the merits of her claim and awarded her damages, stating in pertinent part as follows:
 
 E. Damages
 
 38
 Since the court has concluded that AlliedSignal is liable to the Leyda estate for its failure to disclose the summary plan description ..., the court now turns to the issue of damages. The Leyda estate seeks damages for AlliedSignal's failure to disclose the summary plan description, prejudgment interest, and attorney's fees.
 
 
 39
 "If an employer does not provide a summary plan description ..., ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that result from the failure to disclose." Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir.1990) (citing 29 U.S.C. §§ 1001(b), 1132(a)(1)(B) (1982)). The Leyda estate claims to have suffered roughly $60,000 in damages as a result of defendant's failure to provide the summary plan description....
 
 
 40
 .... [T]he Leyda estate was damaged to the extent that AlliedSignal did not disburse three times Mr. Leyda's salary under his company life insurance policy. In exact figures based on Mr. Leyda's salary, the damages equal $62,250.00.
 
 
 41
 Trial Decision at 20-21. In the wake of this decision, AlliedSignal made no motion for reconsideration on the basis of its present position that § 1132(a)(1)(B) did not provide a cause of action for such damages.
 
 
 42
 AlliedSignal did move in January 2002 for leave to file an untimely motion for reconsideration of the district court's Trial Decision, based on the Supreme Court's January 8, 2002 decision in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) ("Great-West"); but its motion argued that damages are not available in the guise of "restitution" "under... (a)(3)" (Motion for Leave to File Untimely Motion for Reconsideration dated January 11, 2002, at 1). AlliedSignal's motion did not mention § 1132(a)(1)(B).
 
 
 43
 The district court denied the motion, noting that Great-West was inapposite because it dealt only with suits under subsection (a)(3), whereas the district court had based its damage award to Mrs. Leyda on subsection (a)(1)(B), without AlliedSignal's ever having raised any legal issue as to the availability of the damages sought by Mrs. Leyda under the latter subsection. The court stated, to the extent pertinent to this appeal, that
 
 
 44
 in the joint pre-trial memorandum, the plaintiff claimed a general entitlement to relief under § 1132 and specifically referenced § 1132(a)(1)(B) in her proposed conclusions of law. Joint Trial Memo[randum] ... at 3, 34. AlliedSignal was on notice and did not object to Leyda seeking money damages under subsection (a)(1)(B). Therefore, this court explicitly relied on subsection (a)(1)(B) as the basis for its decision. Trial Decision, at 20 (quoting Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir.1990), and noting the citation to section 1132(a)(1)(B) as the basis for recovery). If AlliedSignal believed the court erred by relying on and applying subsection (a)(1)(B), it could have filed a timely motion for reconsideration.
 
 
 45
 (Ruling on AlliedSignal's Motion for Leave to File an Untimely Motion for Reconsideration, dated January 17, 2002 ("Reconsideration Ruling"), at 2-3 (footnote omitted) (emphases added).) The court added:
 
 
 46
 The court also notes that it would construe Leyda's demand for restitution in her complaint as notice that she sought money damages, even if there had been no reference to subsection (a)(1)(B) in the joint pre-trial memorandum.... Given the nature of the claim in this case, the demand for restitution would be considered a legal remedy because there is no claim to specific funds held by AlliedSignal. Therefore, the complaint itself states a demand for money damages and places the defendant on notice that subsection (a)(3) is not the only grounds for relief under § 1132 that the plaintiff sought to pursue.
 
 
 47
 (Reconsideration Ruling at 2 n. 1.)
 
 
 48
 We normally will not reverse a judgment on the basis of an argument that was not made to the district court. See, e.g., Gilbert v. Frank, 949 F.2d 637, 640 (2d Cir.1991); Wilkerson v. Meskill, 501 F.2d 297, 298 (2d Cir.1974) (per curiam). "While this bar to raising new issues on appeal is not absolute, ... it may be overcome only when necessary to avoid manifest injustice." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 527 (2d Cir.) (internal quotation marks omitted), cert. denied, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990); see also Masella v. Blue Cross & Blue Shield of Connecticut, Inc., 936 F.2d 98, 107-08 (2d Cir.1991) (refusing to address an argument on appeal where the party failed to raise it until posttrial submissions to the district court and that court permissibly determined that the argument had been waived).
 
 
 49
 The record here shows plainly that AlliedSignal never argued to the district court that § 1132(a)(1)(B) did not provide a cause of action for the extracontractual damages sought by Mrs. Leyda, and we conclude that that argument has not been preserved for appellate review. Given that the validity of AlliedSignal's present argument is not clear, and that the district court permissibly found that AlliedSignal failed to perform its duties under ERISA, see Part II.B. below, we cannot conclude that the interests of justice warrant relieving AlliedSignal of its waiver. We thus leave this issue for another day and for a case in which the issue has been litigated in the district court.
 
 
 50
 B. AlliedSignal's Failure To Provide Adequate Notice
 
 
 51
 AlliedSignal challenges the district court's ruling on the merits of Mrs. Leyda's claim, arguing that the court erred in finding (a) that AlliedSignal failed to satisfy ERISA's disclosure provisions, and (b) that Leyda relied on AlliedSignal to his detriment. We see no basis for reversal.
 
 
 52
 To the extent pertinent here, ERISA's provisions governing the furnishing of information to plan participants provides that "[t]he administrator shall furnish to each participant ... a copy of summary plan description ... within 90 days after he becomes a participant ...." 29 U.S.C. § 1024(b)(1)(A) (emphasis added); see also id. § 1022(a) ("A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title" and "shall be sufficiently ... comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."). ERISA's disclosure provisions were enacted to "ensur[e] that the individual participant knows exactly where he stands with respect to the plan," Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal quotation marks omitted), and the regulations promulgated under ERISA are designed to achieve that goal. As discussed by the district court in its Trial Decision, see Part I.B. above, the pertinent regulation provides that the summary plan description "must be sent by a method or methods of delivery likely to result in full distribution," that the "administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants," and that "in no case is it acceptable merely to place copies of the material in a location frequented by participants," 29 C.F.R. § 2520.104b-1(b)(1) (emphases added). The district court properly concluded that this regulation means that the plan administrator must make reasonable efforts to ensure each plan participant's actual receipt of the plan documents. We see no error of law in the district court's decision.
 
 
 53
 After hearing the evidence at trial, the district court found that AlliedSignal's efforts were not reasonably calculated to ensure actual receipt of the summary plan description by all plan participants because its distribution procedures could easily have missed some participants. The court's findings after a bench trial may not be overturned unless they are "clearly erroneous," Fed.R.Civ.P. 52(a), and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous," Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); see United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150 (1949). Even when the trial court's findings of fact are based on inferences from other facts, the appellate court must accept those findings unless they are clearly erroneous and may not conduct a de novo review. See, e.g., Anderson v. Bessemer City, 470 U.S. at 573-74, 105 S.Ct. 1504. The fact that there may have been evidence to support an inference contrary to that drawn by the court does not mean that the findings are clearly erroneous. See, e.g., Healey v. Chelsea Resources, Ltd., 947 F.2d 611, 618-19 (2d Cir.1991).
 
 
 54
 Although AlliedSignal argues that the district court erred by "concluding that AlliedSignal was required to actually place a copy of the SPD [summary plan description] in Mr. Leyda's hands" (AlliedSignal brief on appeal at 8), and by "basing its ruling on speculation that employees may not have understood the importance of the benefits meetings that AlliedSignal conducted" (id. at 9), there are no such findings in the Trial Decision. Rather, the court found that some of the 1,500 employees, though not traveling or on leave, might have missed the meetings "[f]or any number of reasons, including a busy schedule or lack of awareness as to the importance of the meeting." Trial Decision at 13 (emphasis added); see also Fee Decision at 13-14 (referring to finding in Trial Decision "that it would not be reasonable to conclude that everyone would attend a meeting if they were physically present at the facility" because "employees may be busy or otherwise unaware of the meeting's importance" (emphasis added)). The finding that busyness could have led some employees not to attend was hardly speculation, as "[Mrs.] Leyda presented evidence at trial that Mr. Leyda did not attend the meetings because he was busy...." Fee Decision at 5.
 
 
 55
 AlliedSignal's argument that the court ruled "that AlliedSignal was required to actually place a copy of the SPD in Mr. Leyda's hands" is hyperbole. The court properly focused on the regulation's requirement that the administrator's procedures be reasonably calculated to achieve actual distribution, and it noted reasonable alternatives that would have made actual full distribution likely, including taking attendance at the meetings in order to send copies of the summary plan description to everyone who failed to attend, or requiring affirmative enrollment in the benefit plans, accompanied by participants' certification of their receipt of the plan documents. The court in fact found that AlliedSignal's assumption that only those employees who were traveling or on leave would fail to attend the meetings was unreasonable, and it found that the distribution methods used were not reasonable because AlliedSignal relied on employees' attendance at the meetings in order to achieve full distribution but made no effort to record the names of those who attended.
 
 
 56
 We cannot conclude that these findings are clearly erroneous. Nor is there clear error in the district court's finding that Leyda relied to his detriment on the belief, caused by AlliedSignal's failure to provide him with the summary plan description, that he had the same level of life insurance coverage with AlliedSignal that he had enjoyed with Textron. There was evidence at trial of that belief and of Leyda's having forgone opportunities to obtain additional coverage in light of that belief. We accordingly affirm the court's ruling that AlliedSignal breached its ERISA duty of disclosure to Leyda and that that breach caused harm.
 
 C. The Denial of Attorney's Fees
 
 57
 ERISA provides, in pertinent part, that in an action brought under the statute by a plan participant or beneficiary the "court in its discretion may allow a reasonable attorney's fee ... to either party." 29 U.S.C. § 1132(g)(1). In the present action, the district court in its Trial Decision denied an award of fees to Mrs. Leyda; and after granting her motion for reconsideration, the court adhered to that denial in its Fee Decision. Mrs. Leyda contends that there is a presumption in favor of awarding fees to a prevailing plaintiff, that the court misapplied the pertinent test, and that the denial of attorney's fees was an abuse of discretion. Although our standard is designed to further ERISA's essential remedial purpose of protecting the beneficiaries of employee benefit plans, we see no abuse of discretion in the district court's application of the standard here.
 
 
 58
 This Court's standard for determining whether attorney's fees should be awarded in an ERISA action is articulated in Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869 (2d Cir.1987) ("Chambless"). The district court must consider
 
 
 59
 (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.
 
 
 60
 Id. at 871. We review a district court's decision to award or deny attorney's fees for abuse of discretion. See, e.g., Salovaara v. Eckert, 222 F.3d 19, 27, 32 (2d Cir.2000).
 
 
 61
 The district court in the present case quoted the Chambless standard and proceeded to address each factor in turn, finding that only the second factor, AlliedSignal's ability to pay an award of attorney's fees, significantly favored an award to Mrs. Leyda. As to the first and fourth factors, the court found that AlliedSignal's performance did "not reflect a high degree of culpability" because AlliedSignal had "made a good faith albeit a failed attempt to abide by the ERISA disclosure requirement," Trial Decision at 23, and that "[a]lthough the court deemed AlliedSignal's method for releasing summary plan documents insufficient to satisfy the statutory requirement, the court considers that holding to have been a close one," Fee Decision at 4-5. The court found that although AlliedSignal's methods were not reasonably calculated to reach all plan participants, they were "reasonably calculated to reach almost everyone," id. at 14 (emphasis in original); see also id. at 5, and thus "the merits of the parties' positions were not greatly disproportionate," Trial Decision at 23.
 
 
 62
 As to the third factor, the district court found that "it is unlikely that such an award would deter others from similar conduct since the defendant had a colorable defense to the plaintiff's cause of action," Trial Decision at 23, and since AlliedSignal had not acted in bad faith, see Fee Decision at 11. The court rejected as a basis for a fee award Mrs. Leyda's argument
 
 
 63
 that the court's comments [on the extent of the disclosure obligations under ERISA] will deter other employers from using the same type of group meetings as AlliedSignal. [Mrs.] Leyda's argument misses the third factor's focal point. The factor emphasizes the deterrence gained from the fee award, not the trial decision. While the court's decision may add to the jurisprudence in this field and further educate plan administrators in how to satisfy their obligations, an award of fees provides no additional benefit.
 
 
 64
 Fee Decision at 11-12.
 
 
 65
 Finally, the district court found that the fifth factor, i.e., whether the action conferred a common benefit on a larger class of plan participants, "only minimally" favored an award of fees. Fee Decision at 14. As there was no evidence as to whether or not plan participants other than Leyda had failed to receive summary plan descriptions, the court "assume[d], given the record," that nonreceipt was "rare." Id. The court thus concluded that any common benefit would be limited to "the rare cases excluded under AlliedSignal's prior method" and would "affect[ ] so few plan participants that its beneficial impact is negligible." Id.
 
 
 66
 Weighing the totality of the factors, the district court concluded as follows:
 
 
 67
 No factor weighs heavily in favor of awarding attorney's fees to the plaintiff. The court must decide whether ability to pay and a minimal common benefit justify awarding attorney's fees to a prevailing plaintiff in a case where the defendant's actions were not unreasonable and where the resolution of the case was close. The court notes that the close nature of the case, which affected several factors, dominates the analysis and justifies weighing the balance of factors to deny fees.
 
 
 68
 Fee Decision at 14-15.
 
 
 69
 We see no abuse of discretion in the district court's analysis of any of the Chambless factors or in its weighing of the factors in totality. There is no inconsistency in the court's findings that AlliedSignal's procedures, though they fell short of being reasonably calculated to achieve actual distribution of the summary plan description to all participants, were not pursued in bad faith. Nor do we see any error in the district court's assessments that the relative merits of the parties' positions in this action were close, that the common benefit conferred was minimal, and that the likely deterrent effect of the merits decision itself would not be enhanced by a fee award.
 
 
 70
 In sum, we conclude that where the court has permissibly found that the defendant, although failing to make reasonably sufficient distribution efforts, did not act in bad faith, that the case was close on the merits, that the common benefit was minimal, and that there was no reason to infer that an award of fees would have any greater deterrent effect than that resulting from the imposition of liability, the district court's decision not to award attorney's fees to the prevailing plaintiff is not an abuse of discretion.
 
 CONCLUSION
 
 71
 We have considered all of the parties' contentions that are properly before us in support of their respective appeals and have found them to be without merit. The judgment of the district court is affirmed.
 
 
 72
 Costs to plaintiff.
 
 
 
 Notes:
 
 
 *
 Judge Ellsworth A. Van Graafeiland, originally a member of the panel, recused himself just prior to oral argument, and the appeal is being disposed of by the remaining members of the panel, who are in agreementSee Local Rule § 0.14(b).