Arthur CHAMBLESS and Mildred H.
Chambless, Plaintiffs-Appellants,

v.

MASTERS, MATES & PILOTS
PENSION PLAN, et al.,
Defendants-Appellees.

No. 539, Docket 86–7789.

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1987.

Decided April 6, 1987.

Arthur M. Wisehart, New York City (Wisehart & Koch, John W. Whittlesey, of counsel), for plaintiffs-appellants.

Bettina B. Plevan, New York City (Proskauer Rose Goetz & Mendelsohn, Joseph Baumgarten, of counsel), for defendants-appellees.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND and PIERCE, Circuit Judges.

FEINBERG, Chief Judge:

This case requires review of the standards for the award of attorney's fees under the Employee Retirement Income Security Act (ERISA) 29 U.S.C. §§ 1001–1461. Plaintiffs Arthur and Mildred Chambless (Chambless) appeal from orders of the United States District Court for the Southern District of New York, Robert L. Carter, J., denying their motion for an award of attorney's fees and their motion to amend the judgment. For reasons set forth below, we affirm in part and reverse in part.

## Background

This is the second time this case has come before us. On the prior appeal and cross-appeal, we affirmed Judge Carter's holding that a pension plan amendment postponing and reducing Chambless' pension rights was arbitrary and capricious and therefore void. *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032 (2d Cir.1985), cert. denied, — U.S. ——, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986). Although familiarity with that opinion is assumed, we will recite those facts necessary to understand the present appeal.

Chambless originally brought suit against the Masters, Mates & Pilots Pension Plan (the Plan), its trustees, its administrator and a variety of other parties. The complaint alleged a host of wrongs, including various ERISA violations, restraint of trade and breach of the duty of fair representation. Judge Carter granted defendants summary judgment on many of Chambless' claims, see *Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F.Supp. 1430 (S.D.N.Y.1983), and dismissed others at the close of Chambless' case at trial. What remained was Chambless' contention that Amendment 47 of the Plan was arbitrary and capricious.

Amendment 47 was part of an effort by the International Organization of Masters, Mates & Pilots (the Union) to pressure older deck officers to retire, thereby creating openings for younger officers so that the younger officers would be content with their union affiliation. As part of this effort, the Union began assigning senior deck officers to lower grade, and lower paying, assignments, *Chambless v. Masters, Mates & Pilots Pension Plan*, 602 F.Supp. 904, 911 (S.D.N.Y.1984), aff'd, 772 F.2d 1032 (2d Cir.1985), cert. denied, — U.S. ——, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986). Since pension benefits under the Plan are wage-related, accepting lower paying jobs reduced the senior officers' pensions.

An older deck officer who refused to accept the low grade assignments had the option of either retiring or entering the employ of a company not affiliated with the Plan. Amendment 47 decreased the attrac-

tiveness of the latter option, however, by providing that an unretired officer, with vested rights under the Plan, who worked for a company that did not participate in the Plan would not receive pension benefits until age 65. In contrast, a retired officer who subsequently worked for a plan participant had to wait no more than six months after he again retired for his pension benefits to resume, regardless of his age. Thus, by delaying their pensions, Amendment 47 effectively punished plan participants for working for non-participant employers. See 772 F.2d at 1039.

The punitive effect of Amendment 47 on Chambless was twofold. By accepting work from a company not participating in the Plan, Chambless would not only forfeit rights to his pension for the almost ten years until he reached age 65, but because of the wage-related provision, "the forfeiture carried an added penalty of halving the benefits ... he would receive." 602 F.Supp. at 910. Chambless, who had accepted work outside the Plan, brought suit to contest the validity of Amendment 47. The district court found that Amendment 47 violated ERISA, 602 F.Supp. 904, and this court affirmed the judgment and remanded "for a determination of the benefits which Chambless would have received in 1977," 772 F.2d at 1043.

After our decision in this case, Chambless moved in the district court to amend the prior judgment in order to calculate the pension benefit to which he was entitled and for an award of attorney's fees. The district court summarily denied the request to amend the judgment and in a separate opinion denied the request for attorney's fees. We first address the request for attorney's fees.

### Attorney's Fees

■ An application for attorney's fees in an ERISA case is governed by 29 U.S.C. § 1132(g)(1).[1] Ordinarily, the decision is based on five factors: (1) the degree of the

offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants. See *Ford v. New York Central Teamsters Pension Fund*, 506 F.Supp. 180, 183 (W.D.N.Y. 1980), aff'd., 642 F.2d 664 (2d Cir.1981) (per curiam).

■ Judge Carter applied the five-factor test to Chambless' motion for attorney's fees. Although he concluded that each of the first four factors "must be decided in plaintiffs' favor" and that Chambless' suit did confer a common benefit, he declined to award fees. The decision of whether to award fees lies within the discretion of the district court. See *Fase v. Seafarers Welfare and Pension Plan*, 589 F.2d 112, 116 (2d Cir.1978). However, because Chambless satisfied each element of the five-factor test, properly construed, we find it was an abuse of discretion to refuse to award any attorney's fees.

In declining to make an award, the district court relied in part on its finding that Chambless did not satisfy the fifth factor because his suit was not "brought" to confer a common benefit. In support of this view the judge cited Chambless' decision, at the start of this litigation, to opt out of a class action suit brought in the Eleventh Circuit, *Deak v. Masters, Mates and Pilots Pension Plan*, No. 79–190–Civ.-T–H (M.D. Fla. June 4, 1984). In *Deak*, the plaintiff class challenged Amendment 46 to the Plan. Both Amendments 46 and 47 covered officers who worked for employers not participating in the Plan; Amendment 46 covered officers who came out of retirement, while Amendment 47 covered officers who had never retired. Judge Carter found that both provisions " 'drew a distinction between certain types of re-em-

---

1. 29 U.S.C. § 1132(g)(1) provides:

    (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

ployment in the industry primarily to protect [the Union] by discouraging members who were eligible for their pension from accepting any job which benefited a competing union.'" (citing *Deak*, slip op. at 15). The plaintiffs in *Deak* were successful, and Judge Carter apparently felt that Chambless could have obtained his relief in that suit. Thus, although Chambless' suit did confer a common benefit by neutralizing Amendment 47, Judge Carter felt that since Chambless chose to opt out of the *Deak* class on the basis of claims that eventually failed, his suit was not "brought" to confer a common benefit.

In distinguishing between the motivation for the ERISA claim and the effect of the claim, Judge Carter relied on language used in *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 602 n. 9 (2d Cir.), cert denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). But *Miles* in turn relied on the opinions of the district court and this court in *Ford v. New York Central Teamsters Pension Fund,* cited above, for the formulation of the factors to be considered in ruling on a fee request under ERISA. Those opinions looked not to plaintiff's motive in bringing suit, but to the effect of plaintiff's victory. It is the latter that is controlling. In short, since the district court found that Chambless' suit had the effect of conferring a common benefit, the fifth factor of the test was satisfied.

Judge Carter's opinion also makes clear that he declined to award attorney's fees, even for time spent on the vindicated ERISA claim, because "[w]hatever plaintiffs might have secured in attorney's fees for litigation limited to a vindication of Chambless' pension benefits has been exceeded by far in costs and expenses plaintiffs have required defendants to expend in defending against their claims." Defendants, however, have not been blameless in this case. The five-part test takes into account the relative merits of the parties' positions and also requires findings about bad faith. With respect to the ERISA claim on which plaintiff prevailed, the district court resolved both of these factors in

his favor. The district court's decision to deny fees completely improperly shifts the issue from whether Chambless is entitled to attorney's fees for his successful claim to whether he should be penalized for his litigation strategy. To the extent that Chambless' actions were "vexatious[ ] and wasteful[ ]," he is obviously penalized by not recovering any attorney's fees for those efforts. This does not affect his right to a reasonable attorney's fee for his successful claim.

■ ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved. See *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589–90 (9th Cir.1984). In this case, the district court found plausible the claim of Chambless' attorneys that they had spent over 9,000 hours and "almost $1 million in lawyers' time" on their clients' behalf. They did succeed in doubling his pension, and all the factors of the ERISA fees test weighed in Chambless' favor. The district court stated, "[h]ad this case been brought solely to vindicate Captain Chambless' claim to appropriate pension benefits, I would have no hesitancy in awarding attorney's fees, since I am satisfied that he was treated badly to serve the political purposes of [the Plan]." Chambless' other claims do not affect this entitlement. Accordingly, on this issue we reverse and remand to the district court so that it can determine and award a reasonable fee for the time spent on Chambless' vindicated ERISA claim.

In his original motion for attorney's fees, Chambless stated "[i]t would not be partical [sic] or feasible to separate" the time reasonably spent on his successful claim out of the 9,000 hours his attorneys expended; he argued instead that his claims constituted "a 'seamless web.'" Judge Carter's reluctance to make a fee award in the face of these assertions is understandable. After his motion for attorney's fees was denied, Chambless did retreat somewhat from his position that the time spent

on his successful claim could not be identified. On remand, however, the burden will lie with Chambless to present an appropriate accounting to the district court of attorney's time spent only on the successful claim.

### Pension Benefit

Chambless also claims that the district court ignored this court's mandate by refusing to amend the judgment to specify the amount of the monthly pension he is entitled to receive. In its prior opinion, the district court held that if Chambless retires and applies for a pension, "the trustees are to treat the application as if it had been made in 1977 and grant him a wage related pension based on his 1967–1977 employment record." 602 F.Supp. at 913. That decision was affirmed in all respects by this court, see 772 F.2d at 1043. We remanded the case to the district court to determine "the benefits which Chambless would have received in 1977." Id.

It appears that Chambless did not actually apply for his pension until August 5, 1986; payments to him commenced as of September 1. The district court's final decision not to amend the judgment came on August 20, 1986—before Chambless began receiving benefits. Therefore, any claim by Chambless that the monthly benefit he would receive would be inadequate could have been properly denied as premature. To that extent, we affirm the refusal of the district court to amend its judgment. However, Chambless is now concededly receiving approximately $920 a month. Any claim that this sum fails to include required cost-of-living adjustments and related claims that he is not receiving, or has not received, the monetary benefits to which he is entitled under the Plan may now be presented to the district court. Upon such presentation, our prior mandate in this case requires the district court to determine whether Chambless is now receiving benefits in the amount to which he is entitled.

Judgment affirmed in part, reversed in part and remanded.