**Steven CRITELLI, Plaintiff,**

v.

**FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, Defendant.**

**No. 05–CV–371 (NGG)(AKT).**

United States District Court, E.D. New York.

March 24, 2008.

---

Gerald Dandendeau, Bart & Schwartz, LLP, Gerald V. Dandeneau, One Huntington Quadrangle, Melville, NY, for Plaintiff.

Andrew P. Marks, Littler Mendelson, P.C., New York, NY, for Defendant.

## MEMORANDUM AND ORDER

NICHOLAS G. GARAUFIS, District Judge.

Plaintiff Steven Critelli ("Critelli" or "Plaintiff") brought this action under Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et. seq. ("ERISA"), against his former employer, Fidelity National Title Insurance Company of New York ("Fidelity" or "Defendant"), to collect a bonus that Plaintiff claimed Fidelity owed him in recognition of his service during the final year of his employment. Fidelity moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the ground that Critelli was not a participant in any employee benefit plan governed by ERISA. By Memorandum & Order dated March 7, 2007, the court granted Defendant's mo-

tion for summary judgment and directed the Clerk of Court to close the case.

Defendant moved for an award of attorney's fees in the amount of $51,000, pursuant to 29 U.S.C. § 1132(g)(1), ERISA's attorney's fee provision. This matter was referred to Magistrate Judge A. Kathleen Tomlinson for a Report & Recommendation ("R & R") on September 27, 2007. In the R & R, dated March 5, 2008, Magistrate Judge Tomlinson recommended that the court find that Plaintiff's arguments were not frivolous or made in bad faith, that "the factors taken as a whole here do not support an award of attorney's fees to Fidelity," and that the court deny an award of attorney's fees. (R & R at 13.) Defendant has failed to file any objections to the R & R within the prescribed ten-day period.

After examining the record, I have determined that the R & R is not subject to attack for plain error or manifest injustice. *See, e.g., Pizarro v. Bartlett,* 776 F.Supp. 815 (S.D.N.Y.1991). The court finds Magistrate Judge Tomlinson's opinion to be thoughtful and thorough; her recommendation that an award of attorney's fees be denied is well reasoned based on the facts of this case and is well founded in applicable law. Accordingly, this court adopts Magistrate Judge Tomlinson's R & R for the reasons stated therein.

For the reasons described above, the court hereby orders that Defendant's motion for an award of attorney's fees is denied.

SO ORDERED.

### REPORT AND RECOMMENDATION

A. KATHLEEN TOMLINSON, United States Magistrate Judge.

#### I. PROCEDURAL SETTING

Plaintiff brought the instant litigation alleging that his employer's Deferred Compensation Plan for managerial employees, which provided him with an option of deferring payment of a portion of his salary and up to 100% of his annual bonus, constituted an "employee benefit" that is protected under the Employee Retirement Income Security Act ("ERISA"). According to Plaintiff, the Defendant employer unjustifiably withheld the bonus when Plaintiff left his employment.

In a Memorandum Decision & Order, Judge Garaufis granted the Defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56, finding that (1) the bonus was computed on the basis of the Defendant employer's pre-tax profits designed to serve as an incentive rather than to provide "retirement income;" (2) the employer provided only an option to defer the bonus and the bonus was not automatically transferred to the Deferred Compensation Plan; and (3) the bonus was paid solely at the discretion of the employer, with the right to exclude those no longer employed at the company at the time the bonus is disbursed. *See* DE 25 at 6–7. Given these facts, Judge Garaufis found that the practice of paying bonuses in this manner did not qualify as an employee benefit plan covered by ERISA. *Id.* at 7.

Defendant has now moved for an award of attorney's fees in the amount of $51,000, relying upon 29 U.S.C. § 1132(g)(1), the ERISA attorney's fee provision. This motion for attorney's fees has been referred to me by Judge Garaufis for a Report and Recommendation.

#### II. THE APPLICABLE STANDARD

■ An application for attorney's fees in an ERISA case is governed by 29 U.S.C. § 1132(g)(1), which provides in pertinent part that

(1) In any action under this subchapter (other than an action described in para-

graph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

ERISA therefore provides that attorney's fees and costs can be awarded to either party. *See Seitzman v. Sun Life Assurance Co. of Can., Inc.,* 311 F.3d 477, 482 (2d Cir.2002) (citing *Miller v. United Welfare Fund,* 72 F.3d 1066, 1074 (2d Cir. 1995)). The decision whether to award fees lies within the discretion of the district court, *see Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987); *Fase v. Seafarers Welfare & Pension Plan,* 589 F.2d 112, 116 (2d Cir.1978), and is reviewed on an abuse of discretion standard, *see Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 138 (2d Cir.2000).

█ In making a determination whether to award attorney's fees in an ERISA case, courts in this Circuit have relied upon the five-part test set forth in *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d at 871. The *Chambless* factors, as they have come to be known, require a court to consider the following issues in evaluating an application for attorney's fees in an ERISA case: "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." *Id.* (citing *Ford v. N.Y. Cent. Teamsters Pension Fund,* 506 F.Supp. 180, 183 (W.D.N.Y.1980), *aff'd,* 642 F.2d 664 (2d Cir.1981)). The test enunciated in *Chambless* takes into account the "relative merits of the parties' positions and also requires findings about bad faith." *Id.* at

872. The Court must now consider each of these factors to determine whether Defendant has satisfied each element and whether it is entitled to an award of attorney's fees.

## III. DISCUSSION

█ In applying the five-factor test, the Court is mindful of its obligation to liberally construe the ERISA attorney's fee provisions to "protect the statutory purpose of vindicating retirement rights." *Chambless,* 815 F.2d at 872. The Second Circuit has observed that the five-factor test "provides sufficient latitude to review a fee request by allowing courts to consider which party is requesting fees, assess the relative culpability of the parties and address the potential deleterious effect of a fee award." *Anita Founds., Inc. v. ILG-WU Nat'l Ret. Fund,* 902 F.2d 185, 189 (2d Cir.1990). The *Chambless* test applies to both plaintiffs and defendants in ERISA actions. *Chambless,* 815 F.2d at 872. However, a number of courts that have evaluated the five factors have concluded that they "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *West v. Greyhound Corp.* 813 F.2d 951, 955 (9th Cir. 1987); *Gray v. New Eng. Tel. & Tel. Co.,* 792 F.2d 251, 259 (1st Cir.1986). The Second Circuit has commented upon and utilized this approach:

> For example, courts have found that the "culpability" of a losing plaintiff "significantly differs" from that of a losing defendant: "A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a congressional mandate. A losing plaintiff, on the other hand, will not necessarily be found 'culpable,' but may be only in error or unable to prove his case."

*Salovaara v. Eckert,* 222 F.3d 19, 28 (2d Cir.2000) (quoting *Marquardt v. N. Am. Car Corp.,* 652 F.2d 715, 720 (7th Cir. 1981)). Moreover, the Court of Appeals has noted that a decision to grant attorney's fees, although "uniquely within the province of a district court" must be "made with restraint and discretion." *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 334 (2d Cir.1999).

### A. *Offending Party's Culpability or Bad Faith*

An affirmation submitted by Defendant Fidelity here states that the employer incurred $60,217 in legal fees in the defense of this action, *see* Aff. of Andrew P. Marks, Esq. in Supp. of Def.'s Mot. for Attorneys' Fees, ¶ 2 [1]—an action Defendant claims was essentially frivolous. *See* Def.'s Mem. of Law in Supp. of its Mot. for Attorney's Fees, at 4.[2] Defendant argues that it has met its burden of demonstrating "bad faith."

■ This first factor regarding "bad faith" is generally the most significant to the overall determination whether a defendant should be awarded attorney's fees in an ERISA setting. According to Defendant Fidelity, Plaintiff adopted a litigation strategy which itself is evidence of bad faith. The Complaint sets forth two causes of action—the first claim for relief is fashioned as an ERISA violation for failure to pay Plaintiff his 2004 bonus in accordance with the Defendant's "bonus compensation plan." Compl. ¶¶ 12, 14. The second claim is asserted for attorney's fees as provided for in § 1132(g)(1). *Id.* ¶ 16.

As to both claims, Defendant argues that Plaintiff knew he could not prevail on a state law claim for breach of contract because there was no dispute that payment of a bonus to terminated employees was within the sole discretion of the Defendant as the employer. Def.'s Mem. of Law at 1. In order to avoid such an outcome, Defendant maintains, Plaintiff creatively attempted to latch on to the ERISA statute to claim that he was denied benefits due him under the terms of the employer's "compensation plan." or "bonus compensation plan." Defendant posits that Plaintiff took this approach because it provided the threat of a fee award against Defendant, pursuant to ERISA, which Plaintiff tried to use as leverage "to extract some settlement payment." *Id.* at 3.

As further demonstration of bad faith, Defendant asserts that Plaintiff engaged in various schemes to wrongfully profit from Defendant. Among these, according to Defendant, was Plaintiff's keeping for himself a refund for New York Islander tickets which had been paid for by Defendant—until Plaintiff was caught, Defendant argues, and had to refund the payment, while simultaneously keeping the interest accrued on that payment which had been reimbursed by the Islanders. *Id.* Defendant also claims that Plaintiff used paid corporate sales trips for dates. These latter two allegations form the basis of a counterclaim filed by Defendant. However, Judge Garaufis, in dismissing

---

[1]. Subsequent references to the Affirmation of Andrew P. Marks, Esq. are cited as "Marks Aff. ¶___."

[2]. Defendant also acknowledges that a portion of the defense fees was attributable to counterclaims which were not related to ERISA. The unrelated fees are estimated to be less than 10% of the total. Marks Aff. ¶ 3. The Marks Affirmation states that the total of unrelated fees, comprising less than 10% of the total fees, is $9,000. Since the total fees are stated to be $60,217, there appears to be a mathematical miscalculation here. In light of the fact that this number does not impact the ultimate determination of the issue at hand, this discrepancy will not be addressed further.

the Complaint, declined to exercise supplemental jurisdiction over the Defendant's state law counterclaim, pursuant to 28 U.S.C. § 1367(c)(3). Since there has been no determination on the merits of the counterclaim, it would be inappropriate to utilize the information underlying the counterclaim in any consideration of this motion for attorney's fees.

In attempting to refute the bad faith argument, Plaintiff states that the "annual bonus, which was always paid by the Defendant and accrued as an expense item on its financial books and records, was directly related to the Defendant's established Deferred Compensation Plan." Pl.'s Mem. of Law at 2. As such, Plaintiff has argued, because the bonus could be deferred in part to the Defendant's Deferred Compensation Plan, that option should be considered part of an ERISA plan within the meaning of 29 U.S.C. § 1002(3). *Id.* Counsel states that "Plaintiff maintained this action, predicated upon the fact that because the bonus arrangement was intertwined with Fidelity's Deferred Compensation Plan, and could be deferred into the Plan, that it changed the bonus arrangement from a non-ERISA plan into an ERISA plan." Decl. of Gerald V. Dandeneau, Esq. at ¶ 8. In effect, Plaintiff has been arguing that the bonus option had become institutionalized over time and because of its involvement with the Deferred Compensation Plan, it should be afforded ERISA treatment. To bolster this argument and to dispel the bad faith allegation, Plaintiff points out that ERISA includes "as an employee benefit plan any plan, fund or program that '(ii) results in a deferral of income by employees for periods extending to termination of covered employment or beyond.' " Pl.'s Mem. of Law at 3 (quoting 29 U.S.C. § 1002(2)(A)).

In his Memorandum Decision & Order, Judge Garaufis rejected Plaintiff's theory of the case. *See* DE 25. The Court concluded that the bonus pay arrangement did not constitute an ERISA plan, despite its link to Defendant's Deferred Compensation Plan. In doing so, Plaintiff argues, the Court did not determine that Plaintiff's claim was so without merit that it rises to the level of bad faith that would be necessary to award attorney's fees. Pl.'s Mem. of Law at 4.

According to Defendant, the Court recognized that Plaintiff "provided no factual basis and no cogent argument in support of his claim that [Defendant] violated ERISA by enforcing the terms of its bonus program to deny him a bonus." Def.'s Mem. of Law at 3. Defendant relies further on the Court's added language in the Memorandum Decision & Order that

> [e]ven if the bonus program at issue had qualified for ERISA protection, Plaintiff's claim . . . still falls short [because it] appears to be based on little more than the fact that he deserves it. In fact, he offers nothing to rebut Defendant's position that the bonuses at Fidelity are paid solely at the discretion of the employer. . . .

DE 25 at 7. Defendant characterizes this passage as the Court's "alternative grounds for dismissal . . . and accordingly, its ability to award attorney's fees pursuant to ERISA." Def.'s Reply Mem. of Law at 1–2. Asserting that the Court's statement effectively provided other grounds for dismissal unrelated to the inapplicability of the ERISA statute, Defendant contends that this additional "finding" takes this action out of the realm of cases where attorney's fees were denied when the only basis for defeating the claim was the inapplicability of ERISA to the circumstances described. *Id.*

For purposes of discussion of the instant motion, the Second Circuit's decision in *Salovaara v. Eckert*, 222 F.3d 19 (2d Cir.

2000), is instructive. There, the Court of Appeals overturned the trial judge's decision to award attorney's fees to the defendant on a finding that plaintiff had acted in bad faith. In doing so, the Court noted that the trial judge, in concluding that the *Chambless* factors weighed in favor of granting the defendant attorney's fees, had omitted any acknowledgment that the *Chambless* test will often balance against a defendant seeking fees. *Salovaara*, 222 F.3d at 28. On the key factor at issue in *Salovaara*, namely, whether the plaintiff acted in bad faith in bringing the action as defendant Eckert contended, the district judge ruled that

> (1) "[t]he lack of evidentiary support for plaintiff's central arguments, plaintiff's reliance on testimony in this action that contradicted his testimony in another case, and plaintiff's introduction of arguments in his summary judgment papers that plaintiff's counsel foreswore in a conference before the Court, all suggest that plaintiff acted in bad faith"; (2) an award of fees "would serve to discourage litigants from bringing baseless claims" and from treating ERISA as "little more than a statutory hook upon which to hand [their] business disputes"; and (3) [defendant's] position had greater merit because "the Court's analysis in [*Salovaara II*] found plaintiff's claims to be without support."

*Id.* at 29 (quoting *Salovaara v. Eckert*, No. 94 Civ. 3430, 1998 WL 276186, at *2 (S.D.N.Y. May 28, 1998) ("*Salovaara II*")). Despite these findings, including Salovaara's reliance on testimony that directly contradicted his testimony in another case, the Second Circuit determined that the district court's finding of bad faith was in error. *Id.* The Court went on to note that Salovaara's failure to produce evidentiary support for his arguments had to be viewed in light of his reliance on two cases—reliance which the Court found was

premised upon incorrect interpretations of those two cases. Taking that issue into account, the Court of Appeals noted "we cannot say that Salovaara's arguments were frivolous or made in bad faith." *Id.* Moreover, the Court went on to rule that a "benefits claimant who has a reasonable belief that he is entitled to benefits (*i.e.*, a colorable claim) is not acting in bad faith." *Id.* at 30. In the matter now before this Court, Plaintiff's purported claim under ERISA, though admittedly "thin," is nonetheless a colorable claim and, as such, cannot be held to be evidence that Plaintiff acted in bad faith in bringing the litigation.

The only case cited by Defendant in support of its bad faith argument is *Seitzman v. Sun Life Assurance Co. of Can., Inc.*, 311 F.3d 477 (2d Cir.2002). Having carefully reviewed the *Seitzman* case, I find it to be distinguishable from the instant matter. In *Seitzman*, the physician plaintiff appealed the district court's finding of bad faith and resulting attorney's fee award. There, plaintiff sought total disability benefits and brought an ERISA claim based on a denial of coverage under a group long-term disability insurance plan. *Id.* at 479–80. According to the physician plaintiff, he had a "reasonable belief that he was unable to perform the material and substantial duties of his own occupation" because he suffered from various medical problems. *Id.* at 483.

In reviewing the evidence proffered by Dr. Seitzman, however, the district court found that Seitzman's belief was not reasonable and declined to credit most of his testimony. *Id.* The court set forth a litany of evidence supporting a finding of bad faith, including false statements made by Dr. Seitzman on an employment application, false statements on insurance claim forms, and a false statement in a sworn pleading filed in a state court proceeding. *Id.* at 483–84. In comparing the facts of

the *Seitzman* case with its prior decision in *Salovaara v. Eckert,* the Second Circuit drew a significant distinction:

> We reaffirm our warning in *Salovaara* that ERISA's purpose of "promot[ing] the interests of plan beneficiaries and allow[ing] them to enforce their statutory rights ... often counsels against charging fees against ERISA beneficiaries since private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose." *Salovaara v. Eckert,* 222 F.3d 19, 28 (2d Cir.2000) (internal quotation marks and citations omitted). Unlike the plaintiff in *Salovaara,* however, Dr. Seitzman was fully aware of his burden to demonstrate entitlement to total disability benefits. And in attempting to do so, he presented testimony that was found to be deliberately false as to the most material points, in a trial context that reflected other statements by him on material matters that were at best misleading.

*Seitzman,* 311 F.3d at 485 (second internal citation omitted).

The egregiousness of the plaintiff's conduct in *Seitzman* is a far cry from Plaintiff's pressing an ERISA claim in the case now before this Court. Nor do the facts of the instant case come within the purview of other decisions where attorney's fees have been awarded to a prevailing defendant on a finding of bad faith. *See, e.g., Owen v. Soundview Fin. Group,* 54 F.Supp.2d 305, 326–27 (S.D.N.Y.1999) (by making material misstatement of fact, plaintiff's plan fiduciary acted in bad faith, thus warranting an award of attorney's fees against plaintiff); *Sewell v. 1199 Nat'l Benefit Fund for Health & Human Ser-*

*vices,* No. 04 Civ. 4474, 2007 WL 1434952, at * 1 (S.D.N.Y. May 15, 2007) (where plaintiffs knowingly and intentionally over-billed defendants for medical services they provided based on a dollar value they considered themselves entitled to rather than the actual services performed, plaintiffs were culpable parties operating in bad faith and fell outside the scope of the general rule favoring ERISA plaintiffs).

It is also worth noting that Defendant never filed a motion to dismiss the Complaint in this action. Indeed, although Defendant believed that its discretionary practice of paying bonuses, a portion of which employees had the option to defer to the company's Deferred Compensation Plan, did not qualify in any way as an ERISA plan, the record reveals that Defendant nonetheless did not seek to dismiss the pleading entirely on such legal grounds after the Complaint was filed, nor did it move on grounds of a bad faith filing. No information provided in the motion for attorney's fees indicates that there were any facts in contention with regard to the bonus payments. Defendant presumptively had its own well-founded reasons for proceeding in the discovery phase as it did. Although not dispositive in any way, this is an element to be considered in weighing an assertion of bad faith.

### B. Ability to Satisfy an Attorney's Fee Award

Defendant seeks an attorney's fee award of $51,000. Plaintiff's W–2 Wage and Tax Statement for 2004 [3] shows wages/compensation in the amount of $627,998.49. On that basis, Defendant argues that Plaintiff is fully able to satisfy an attorney's fee award of $51,000.

---

**3.** Plaintiff's W–2 from Fidelity National Management was annexed as Exhibit "B" to the Nicastro Reply Affirmation submitted in support of Defendant's Motion for Summary Judgment.

Plaintiff, however, asserts that "Defendant can easily afford the costs of this litigation, while the Plaintiff does not nearly have similar financial resources as the Defendant." Plaintiff further notes that based upon Defendant's having generated over $138,000,000 in earned commissions from the region supervised and managed by Plaintiff, Defendant has essentially saved itself substantially more than the costs incurred in this litigation. Decl. of Gerald V. Dandeneau ¶ 12. Given the numbers at issue here, it appears that Plaintiff can afford an award of attorney's fees, so this factor favors the Defendant. However, the fact that a party can satisfy an award of attorney's fees is not dispositive. *Veltri v. Bldg. Serv. 32B–J Pension Fund*, No. 02 Civ. 4200, 2004 WL 856329, at *2 (S.D.N.Y. Apr. 20, 2004).

## C. *Deterrence*

The third factor is "whether an award of attorney's fees would deter other persons from acting similarly under like circumstances." *Jones v. O'Higgins*, 736 F.Supp. 1243, 1246 (N.D.N.Y.1990). An award of attorney's fees, according to Defendant, "would not deter legitimate claims for benefits but would deter other persons seeking to scam money by bringing frivolous ERISA actions to circumvent state contract law." Def.'s Mem. of Law at 3.

However, having examined the bad faith issue and having found a lack of evidence establishing bad faith, this case falls more closely in line with the Second Circuit's findings in *Salovaara:*

> [W]here, as in this case, an ERISA plaintiff has pursued a colorable (albeit unsuccessful) claim, the third *Chambless* factor likely is not merely neutral, but weighs strongly *against* granting fees to the prevailing defendant. Awarding fees in such a case would likely deter beneficiaries and trustees from bringing suits in good faith for fear that they

would be saddled with their adversary's fees in addition to their own in the event that they failed to prevail; this, in turn, would undermine ERISA's essential remedial purposes of protecting beneficiaries of pension plans.

*Salovaara v. Eckert*, 222 F.3d at 31 (emphasis in the original).

It has further been noted that "the deterrence factor should be used 'as a shield, to protect beneficiaries from the fear of having to pay to pursue an important ERISA claim in the event of failing to prevail' and not 'as a sword to discourage beneficiaries' from pursuing certain meritless claims.' " *Seitzman*, 311 F.3d at 486 (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 505 (5th Cir.2000)). Even if it might discourage similar suits, an award of attorney's fees in this instance would work against ERISA's purpose in protecting beneficiaries. *See Jones v. O'Higgins*, 736 F.Supp. at 1245.

## D. *Relative Merits of the Parties' Positions*

The first and fourth *Chambless* factors are often considered to be "intertwined." *See, e.g., Seitzman*, 311 F.3d at 483; *Sewell*, 2007 WL 1434952 at *1. As to the fourth factor, this issue cuts in favor of the Defendant for the obvious reason that Fidelity prevailed on achieving summary judgment. However, the Court has already determined that Plaintiff did not act in bad faith in asserting the specific theory of an ERISA violation when this litigation commenced. Plaintiff's position can "hardly be deemed to be so disproportionately meritless as to justify the imposition of an award of attorney's fees." *Gibbs*, 210 F.3d at 505.

## E. *Whether the Action Conferred a Common Benefit*

Given the facts in this case, I find that this fifth factor does not favor either party.

While Plaintiff brought this action for his own benefit, it can be argued that other persons who were terminated and had the same deferral-of-bonus option to the Deferred Compensation Plan would have stood to gain a benefit if the Court determined that the plan was covered by ERISA. *See Jones,* 736 F.Supp. at 1247.

## IV. CONCLUSION

In light of all the foregoing information, the Court cannot say that Plaintiff's arguments were frivolous or made in bad faith. Although Plaintiff did not assert the strongest of arguments in favor of his position, the Court must nonetheless be mindful of ERISA's purpose "to promote the interests of plan beneficiaries and allow them to enforce their statutory rights." *Jones,* 736 F.Supp. at 1245. Having no definitive basis for establishing bad faith, the Court finds that a fee award is unwarranted and the "possible disincentive to potentially meritorious ERISA plaintiffs overrides Defendants' interest in not paying to defend the lawsuit." *Kazazian v. Bartlett & Bartlett LLP,* No. 03 Civ. 7699, 2007 WL 4563909, at *4 (S.D.N.Y. Dec.19, 2007). The factors taken as a whole here do not support an award of attorney's fees to Fidelity and I am recommending to Judge Garaufis that Defendant's motion for an award of attorney's fees be DENIED.

**Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 10 days of service and failure to file objections within this period waives the right to appeal.** See 28 U.S.C. § 636(b)(1)(c) (2006); Fed.R.Civ.P. 6(a), 6(e), and 72; *Beverly v. Walker,* 118 F.3d 900, 901 (2d Cir.), *cert. denied,* 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996). Therefore, the parties are directed to file any written objections to this Report and Recommendation with Judge Garaufis not later than 10 days from the date of this Order.

**SO ORDERED.**

March 5, 2008.