BRICKLAYERS AND ALLIED CRAFT-WORKERS LOCAL 2, Albany, New York Pension Fund, by its Administrator, Stephen J. O'Sick; Bricklayers and Allied Craftworkers Local 2, Albany, New York Health Benefit Fund, by its Administrator, Stephen J. O'Sick; Bricklayers and Allied Craftsmen Local 2 Annuity Fund, by its Administrator, Stephen J. O'Sick; Bricklayers and Allied Craftworkers Local 2, Albany, New York Education & Training Fund, by its Trustees, Robert Mantello, Pasquale Tirino, Luke Renna, Michael Suprenant, J.D. Gilbert, Thomas Marinello, Todd Helfrich and Laura Regan; Bricklayers

and Trowel Trades International Pension Fund, by David Stupar, Executive Director; and Bricklayers and Allied Craftworkers Local 2, Albany, New York, AFL–CIO, by Robert Mantello, President, Plaintiffs,

v.

MOULTON MASONRY & CONSTRUCTION, LLC and Duane E. Moulton, individually and as an Officer of Moulton Masonry & Construction, LLC, Defendants.

No. 1:13–CV–201.

United States District Court, N.D. New York.

Signed July 7, 2015.

Jennifer A. Clark, Esq., Blitman & King LLP, Syracuse, NY, for Plaintiffs.

William J. Keniry, Esq., Eric Nolan Dratler, Esq., Brian M. Quinn, Esq., Tabner, Ryan & Keniry, LLP, Albany, NY, for Defendants.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

Plaintiffs filed this action on February 22, 2013, against defendants alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor–Management Relations Act of 1947 ("the LMRA").

Generally, plaintiffs alleged defendants failed to timely remit fringe benefit contributions and deductions to plaintiffs in ac-cordance with the applicable collective bargaining agreement ("CBA") and in violation of ERISA. They sought delinquent contributions and benefits, prejudgment interest, liquidated damages, and attorneys' fees and costs pursuant to the CBA, ERISA, and the LMRA.

## II. BACKGROUND

On April 24, 2013, the Clerk of the Court made an entry of default against both defendants, as neither had appeared in this action despite having been properly served. In January 2014, plaintiffs' motion for default judgment against both defendants was granted, defendants' cross-motion to vacate the entry of default was denied, and judgment was entered accordingly. Judgment was entered in favor of plaintiffs and against defendants in a total amount of $662,135.21. This included $451,300.52 in fringe benefit contributions and deductions; $104,628.81 in prejudgment interest through October 21, 2013; $99,203.93 in liquidated damages; and $7,001.95 in attorneys' fees and costs. Defendants appealed.

On February 26, 2015, the United States Court of Appeals for the Second Circuit issued a Certified Order affirming the denial of defendants' cross-motion to vacate the entry of default, affirming the entry of default judgment against the LLC, but vacating the entry of default judgment against defendant Duane E. Moulton ("Moulton" or "defendant"). *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189–90 (2d Cir.2015) (per curiam). The Second Circuit noted that Moulton—as a fiduciary—is liable for the $451,300.52 in withheld fringe benefit contributions and deductions, but explained that he cannot be liable for the $99,203.93 in liquidated damages. *Id.* at 190. The matter was remanded with instructions to consider

Moulton's liability for prejudgment interest and attorneys' fees. *Id.*

On April 14, 2015, in accordance with the Mandate of the United States Court of Appeals for the Second Circuit, an Order was entered vacating the entry of default judgment against Moulton in his individual capacity. The Order directed the parties to submit briefing regarding whether Moulton should be liable for prejudgment interest and/or attorneys' fees and in what amount(s). These issues have been fully briefed and were considered on their submissions without oral argument.

## III. DISCUSSION

It is noted that although an Order was entered vacating the entry of default judgment against Moulton in his individual capacity, the Second Circuit affirmed the finding of liability with respect to both the corporate and the individual defendant, and remanded only to consider the award of damages against Moulton in his individual capacity. The Second Circuit remanded with specific instructions to consider an award of prejudgment interest and attorneys' fees against Moulton. Thus, the issue of Moulton's liability need not be considered again. *See Bricklayers,* 779 F.3d at 189 ("Here, the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs, establish that Moulton was a fiduciary under ERISA and breached his fiduciary duty.... These facts constitute a sufficient basis to affirm the district court's holding that the individual defendant was liable as an ERISA fiduciary.")

### A. Prejudgment Interest

■ In a suit to enforce a right under ERISA, the question of whether or not to award prejudgment interest is left to the discretion of the district court. *Jones v.*

*UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 139 (2d Cir.2000). "In exercising such discretion, the court is to take into consideration (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* (internal quotations omitted). Applying these principles to the facts of this case, it is found that prejudgment interest is necessary to fully compensate plaintiffs and to avoid unjust enrichment of Moulton. The employee benefit plans' investments lost income as a result of Moulton's delinquency; because he failed to fulfill his fiduciary duty to remit trust assets/contributions to plaintiffs when required by the CBA, he deprived plaintiffs of money which could have been invested and which could have generated income on plaintiffs' investments.

■ "As a fiduciary, the individual defendant can only be required under ERISA to 'make good to [the] plan any losses to the plan resulting from [his] breach, and ... [provide] such other equitable or remedial relief as the court may deem appropriate.'" *Bricklayers,* 779 F.3d at 190 (quoting 29 U.S.C. § 1109(a)). "[T]o grant such relief against a fiduciary in his individual capacity, [the court] is required to articulate the reasons justifying such an award and the interest rate chosen." *Id.* (citing *Henry v. Champlain Enters., Inc.,* 445 F.3d 610, 622–23 (2d Cir.2006)).

Plaintiffs now request $158,945.26 in interest through May 1, 2015. Pls.' Mem. Supp. Def. J. 2, ECF No. 32. That calculation is based on their assertion that Moulton is liable for $362,758.68 in with-

held fringe benefit contributions.[1] *Id.* However, the Second Circuit made clear that "[t]he fiduciary's liability would certainly include the $451,300.52 in withheld fringe benefit contributions and deductions." *Bricklayers*, 779 F.3d at 190. Defendants noted plaintiffs' apparent departure from the sum of $451,300.52 affirmed by the Second Circuit. In reply, plaintiffs make no mention of their most recently requested $362,758.68 in withheld fringe benefit contributions and instead cite the Second Circuit's recognition of Moulton's liability for contributions in the amount of $451,300.52. Yet, plaintiffs continue to request $158,945.26 in prejudgment interest—an amount based on $362,758.68 in withheld fringe benefit contributions.

In their initial motion for default judgment, filed October 21, 2013, plaintiffs sought $451,300.52 in withheld fringe benefit contributions and deductions for the period of July 1, 2009, through March 31, 2013; $104,628.81 in interest through October 21, 2013; and $7,001.95 in attorneys' fees and costs ($6,184.15 in attorneys' and paralegal fees and $817.80 in costs and disbursements incurred between February 12 and October 18, 2013).[2] *See* ECF No. 13. In support of these calculations of damages, plaintiffs attached to its initial motion for default judgment the following: (1) affidavits of Jennifer A. Clark, plaintiffs' counsel; Jessica L. Dennis, a legal assistant to plaintiffs' counsel; Stephen J. O'Sick, Trustee and Administrator of the

Pension, Annuity, and Health Benefit Funds; Robert Mantello, President of the Union and also Trustee of the Pension, Annuity, Health Benefit, and Education and Training Funds; and David F. Stupar, Executive Director of the International Pension Fund; (2) the Trusts; (3) the Collections Policy; (4) the CBA; and (5) calculations of damages at the applicable rates of interest, including an affidavit from Certified Public Accountant Joseph Hanlon.

On remand, following the undersigned's directive, the parties submitted supplemental briefing regarding damages against Moulton in his individual capacity. A hearing to ascertain the damages in this case is unnecessary in view of the affidavits and documentary evidence submitted by plaintiffs.

In accordance with the Second Circuit's finding, plaintiffs are entitled to recover the amount of $451,300.52 in withheld fringe benefit contributions and deductions for the period of July 1, 2009, through March 31, 2013. Plaintiffs' recent supplemental briefing seeks prejudgment interest based on the highest rate of return on the funds' investments during the period 2010 through 2014. *See* O'Sick Aff., ECF No. 32–2, ¶¶ 7, 9. Based on plaintiffs' calculations, they are entitled to $158,945.26 in interest through May 1, 2015. *See* Dennis Aff., Ex. A, ECF No. 32–4.[3] However, plaintiffs fail to cite any

---

1. Yet, an affidavit from Stephen J. O'Sick, Trustee and Administrator for the Pension Fund, Annuity Fund, and Health Benefit Fund, indicates that defendants owe $350,151.77 in withheld fringe benefit contributions. O'Sick Aff., ECF No. 32–2, ¶¶ 5, 9. On that amount of withheld contributions, O'Sick calculated the lost investment income as $149,862.53. *Id.* ¶ 9. Plaintiffs do not note this conflict in the amount of withheld contributions and corresponding prejudgment interest due, nor attempt to reconcile it.

2. Plaintiffs also sought liquidated damages against both defendants, however that request need not be considered now as the Second Circuit found that liquidated damages were inappropriate against Moulton.

3. Again, the $158,945.26 sought in prejudgment interest is based on plaintiffs' incorrect assertion that Moulton is only liable for $362,758.68 in withheld contributions, instead of $451,300.52.

case law support their position that they are entitled to the highest rate of return on investments. Nor have plaintiffs included any detailed information regarding their investments and the overall rate of return on them. Plaintiffs' speculation that they would have invested all of the funds into specific, high risk investments and that all of the investments would have produced high rates of return up to forty percent (40%) is unpersuasive.

Instead, plaintiffs are entitled to interest on the unpaid contributions at the rates provided by the Trusts and CBA. Pursuant to the Collections Policy, Trusts, and CBA, interest on unpaid contributions to the Pension, Annuity, and Health Benefit Funds is calculated at a rate of twelve percent (12%) per annum, *see* O'Sick Aff., ECF No. 13–7, ¶ 12; interest on unpaid contributions to the Education and Training Fund is calculated at the rate of two percent (2%) above prime rate as set by the Federal Reserve Bank per annum, *see id.*; interest on unpaid International Pension Fund, International Union dues, IMI and Political Action Committee contributions is calculated at the rate of fifteen percent (15%) per annum, *see id.*, and interest on unpaid Union dues deductions, Defense and Benefit Fund, Vacation Fund, Capital District Masonry Institute, and the Industry Advancement Program/Industry Fund monies, is calculated at the rate of nine percent (9%) per annum, *see id.*[4]

Based on the contractually provided for interest rates, in their initial motion for default judgment, plaintiffs sought interest in the amount of $81,683.24 on unpaid contributions to the Pension, Annuity, and Health Benefit Funds, $587.42 on unpaid

contributions to the Education and Training Fund, $12,767.63 on unpaid contributions to the International Pension Funds, $5,703.26 on unpaid contributions to the Local Dues and Defense and Benefit Fund, and $3,887.26 on unpaid contributions to the Vacation Fund, for a total of $104,628.81 in interest for the period through October 21, 2013. *See* Dennis Aff., Ex. A, ECF No. 13–18. Prejudgment interest in this amount will fully compensate plaintiffs for damages suffered but will not serve as a windfall to them.

Accordingly, plaintiffs are entitled to $104,628.81 in prejudgment interest.

### B. *Attorneys' Fees and Costs*

▉ Pursuant to 29 U.S.C. § 1132(g)(1), the court in its discretion may allow reasonable attorneys' fees and costs to either party. In determining whether to make such an award, the court is ordinarily to consider five factors:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987). These factors are applicable regardless of which party seeks attorneys' fees. *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir.2000).

"Although the *Chambless* test applies to both plaintiffs and defendants in ERISA

---

4. The Pension, Annuity, and Health Benefit Funds are collection agent for the Education and Training Fund, the Capital District Masonry Institute, the International Pension Fund, the Defense and Benefit Fund, the In-

dustry Advancement Program/Industry Fund, the Bricklayers and Allied Craftworkers Political Action Committee, and the Union. *See id.* ¶ 3.

actions, courts have cautioned that the five factors very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *Id.* (internal quotations omitted). As the Second Circuit explained:

> [C]ourts have found that the "culpability" of a losing plaintiff "significantly differs" from that of a losing defendant: "A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate. A losing plaintiff, on the other hand, will not necessarily be found 'culpable,' but may be only in error or unable to prove his case." *Marquardt v. N. Am. Car Corp.,* 652 F.2d 715, 720 (7th Cir.1981); *see id.* at 720–21 (discussing the other four factors); *see also Carpenters S. Cal. Admin. Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.1984) (explaining "why trustees of benefit plans are more likely than employers to recover fees when the [five factors] are applied").

*Salovaara,* 222 F.3d at 28. "[T]he favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith—the purpose of ERISA being to promote the interests of plan beneficiaries and allow them to enforce their statutory rights." *Id.* (internal quotations omitted).

■ Plaintiffs contend they incurred $7,001.95 in attorneys' fees and costs through October 18, 2013 to collect the debt owed to them by virtue of Moulton's failure to remit contributions to the funds. *See* Clark Aff., Ex. E, ECF No. 13–6. They argue they were forced to retain an accountant to conduct a payroll audit, at the cost of $21,000 through October 2013. *See* Hanlon Aff., Ex. A, ECF No. 13–19. Finally, plaintiffs assert they incurred additional attorneys' fees and costs defending this case on appeal from October 19, 2013

through April 23, 2015, and as the prevailing party on appeal, they are entitled to an additional $44,483.68 in appellate attorneys' fees and costs. *See* Clark Aff., Ex. A, ECF No. 32–1.

In response, Moulton contends plaintiffs are not entitled to the $7,001.95 in attorneys' fees and costs through October 18, 2013 based on the *Chambless* factors: there is no proof he acted in bad faith; he lost over $500,000 in revenue on the union projects which made it near impossible to make the contributions, and presumably difficult to satisfy an award of attorneys' fees; there is no evidence such an award would serve as a deterrent; plaintiffs' position lacked merit as they lost on appeal and the default judgment against him was vacated; and the initial default judgment did not confer any benefit on a group of participants. Defendant further argues the request for audit fees is improper because plaintiffs had already incurred the audit fees at the time of their initial motion for default judgment, yet those fees were not included in the first award to plaintiffs. Moulton also takes issue with the lack of documentation regarding the audit fees. Further, he contends supplemental attorneys' fees and costs in the amount of $44,483.68 are beyond the scope of the remand, and he was in fact the prevailing party on appeal. He argues he should be awarded attorneys' fees because the default judgment was vacated against him on appeal, not affirmed. He seeks $30,292.85 in attorneys' fees and costs for amounts incurred from November 14, 2013 to March 24, 2015. *See* Quinn Decl., Ex. A, ECF No. 41–1

The *Chambless* factors weigh in favor of granting plaintiffs an award of attorneys' fees and costs for the default judgment motion and defending the appeal, and against granting defendant an award of attorneys' fees and costs for pursuing the

appeal. As to an award in favor of plaintiffs: although an entry of default was entered against Moulton for his failure to answer, the undersigned and the Second Circuit found him culpable based on the factual allegations in the complaint combined with uncontroverted documentary evidence which established that he breached his fiduciary duty; an award of fees would deter other persons from acting similarly under like circumstances; the plaintiffs' position was of merit as liability was affirmed on appeal against both the corporate and individual defendant and the matter remanded only for consideration of damages; and finally, the plaintiffs' decision to pursue this action conferred a common benefit on the pension plan participants when plaintiffs were awarded withheld benefit contributions, liquidated damages, prejudgment interest, and attorneys' fees and costs. The ability of the offending party to satisfy an award of attorneys' fees does not weigh in favor of either party. In total, these factors support an award of attorneys' fees to compensate plaintiffs for collecting the debt owed to them by virtue of Moulton's failure to remit contributions to the funds.

■ Plaintiffs submitted detailed time records for the motion which have been reviewed and it is found they are reasonable. The records demonstrate that between February 12 and October 18, 2013, plaintiffs incurred $6,184.15 in attorneys' and paralegal fees and $817.80 in costs and disbursements, for a total of $7,001.95. This is based on 12.25 attorney hours at $279.00 per hour, and 18.20 paralegal hours at $152.00 per hour. Clark Aff., Ex. E, ECF No. 13–6.

Plaintiffs also submitted detailed time records for the appeal and subsequent remand which have been reviewed and it is found they are reasonable in part. Plaintiffs assert that they incurred an additional

$40,826.95 in attorneys' fees and $3,656.73 in costs during the period October 19, 2013 through April 23, 2015. This is based on 10.45 attorney hours at $279.00 per hour, 129.25 attorney hours at a revised rate of $282.00 per hour, 3.90 paralegal hours at $152.00 per hour, and 5.65 paralegal hours at a revised rate of $154.00 per hour. Clark Aff., Ex. A, ECF No. 32–1.

■ In determining the reasonableness of attorneys' fees rates, the Second Circuit has held that the court is "to bear in mind all of the case-specific variables that [the courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," which is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir.2008). "The relevant factors for the court to consider include the complexity and difficulty of the case, the resources required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case." *Harrigan v. Ransom*, No. 5:13–CV–1434, 2015 WL 145441, at *5 (N.D.N.Y. Jan. 12, 2015) (D'Agostino, J.). In *Harrigan*, the Court relied on a another case with similar facts to hold that the reasonable fees were the prevailing rates in the community of $210 per hour for experienced attorneys and $80 per hour for paralegals. *Id.* (citing *I.B.E.W. Local 910 Welfare, Annuity & Pension Funds v. Grayco Elec., Inc.*, No. 7:12–CV–652, 2013 WL 495638, at *4 (N.D.N.Y. Feb. 7, 2013) (D'Agostino, J.)).

Defendants have not challenged these rates. It is found that the number of hours (12.25 in attorney hours and 18.20 in paralegal hours) at rates of $279.00 per hour for attorneys and $152.00 per hour for paralegals for the default judgment

motion are reasonable, considering the complexity and difficulty of the case, the resources required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case. Thus, plaintiffs are entitled to $6,184.15 in fees. The evidence also supports an award of $817.80 in costs in connection with the default judgment motion, for a total of $7,001.95.

However, plaintiffs' request for an additional $44,483.68 in attorneys' fees and costs incurred in defending the appeal is unreasonable based on the above factors. Instead, it is found that half of the attorney hours expended are reasonable, that is, 69.85 attorney hours at the approved rate of $279.00 per hour, as well as the requested 9.55 paralegal hours, at the approved rate of $152.00 an hour. Thus, plaintiffs are entitled to $20,939.75 in appellate fees. The evidence also supports an award of $3,656.73 in costs in connection with the appeal, for a total of $24,596.48.

Finally as to plaintiffs, their request for audit fees in the amount of $21,000 will be denied because they had already incurred the audit fees at the time of their initial motion for default judgment, yet those fees were not included in plaintiff's first award and there is no reason to do so now.

Defendant's argument that he is entitled to an award of attorneys' fees against plaintiffs for pursuing and allegedly prevailing on appeal is without merit. Although the default judgment was vacated against Moulton, he ignores that the Second Circuit found him liable for breaching his fiduciary duties, and remanded for consideration of and calculation of damages. Further, the *Chambless* factors

weigh against an award of attorneys' fees in defendant's favor for pursuing the appeal. As noted above, the purpose of ERISA is to promote the interests of plan beneficiaries and allow them to enforce their statutory rights, and awarding attorneys' fees against plaintiffs would not serve this purpose. Instead, it would deter plan beneficiaries and participants from pursuing such actions in the future. Plaintiffs prevailed in their motion for default judgment against both the corporate (liability and damages) and individual defendant (liability), and they should not be penalized because the undersigned's damages analysis did not meet the Second Circuit's approval.

Accordingly, plaintiffs are entitled to $7,001.95 in attorneys' fees and costs in connection with the default judgment motion and an additional $24,596.48 in attorneys' fees and costs in connection with the appeal.

## IV. CONCLUSION

Moulton's individual liability as a fiduciary was affirmed by the Second Circuit. Default judgment will be entered against him in the amount of $451,300.52 for withheld fringe benefit contributions. Prejudgment interest is appropriate in the amount of $104,628.81, which covers the period through October 2013 when plaintiffs' motion for default judgment was filed. Finally, attorneys' fees and costs will be awarded to plaintiffs, the prevailing party on the motion for default judgment and appeal. A total award of $31,598.43 in attorneys' fees and costs will cover the expenses plaintiffs incurred through the filing of their motion for default judgment and defending their judgment on appeal. Accordingly, judgment will be entered against Moulton in the amount of $587,527.76.

Therefore, it is

ORDERED that

The Clerk of the Court is directed to enter default judgment in favor of plaintiffs and against defendant Duane E. Moulton in a total amount of $587,527.76. This includes $451,300.52 in withheld fringe benefit contributions and deductions for the period of July 1, 2009, through March 31, 2013; $104,628.81 in prejudgment interest through October 21, 2013; $7,001.95 in attorneys' fees and costs in connection with the default judgment motion ($6,184.15 in attorneys' and paralegal fees and $817.80 in costs between February 12 and October 18, 2013), and $24,596.48 in attorneys' fees and costs in connection with the appeal ($20,939.75 in attorneys' and paralegal fees and $3,656.73 in costs between October 19, 2013 and April 23, 2015).

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.